668 So.2d 254 (1996)
Murad Rashid MUHAMMAD, as natural guardian of Muharram Muhammad, Appellant,
v.
TOYS "R" US, INC., Appellee.
No. 95-365.
District Court of Appeal of Florida, First District.
February 15, 1996.
*255 Robert M. Loehr of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for Appellant.
Thomas R. Jenkins of Bozeman, Jenkins & Matthews, P.A., Pensacola, for Appellee.
MICKLE, Judge.
Appellant Murad Rashid Muhammad (Muhammad), as natural guardian of Muharram Muhammad, appeals from a jury verdict and judgment rendered in favor of appellee, Toys "R" Us, Inc. (Toys "R" Us), in an action for negligence and products liability. Muhammad claims, and we agree, that he is entitled to a new trial on the grounds that improper statements and inflammatory remarks uttered by counsel for Toys "R" Us during closing argument and voir dire exceeded the bounds of propriety, prejudicially influencing the jury and negating a fair trial. We reverse *256 the judgment and remand for a new trial.
This case arises from injuries suffered by Muhammad's seven-year-old son, Muharram, while he was riding a bicycle purchased from Toys "R" Us. Muhammad sued Toys "R" Us alleging negligence in the assembly of the bicycle's brakes and strict liability for the sale of a defective product. Toys "R" Us raised numerous affirmative defenses, one being that the injuries were a result of the actions of a non-party, namely, the foreign manufacturer of the bicycle and/or the brake pads. Following a lengthy trial, the jury returned a verdict finding that Toys "R" Us did not sell a defective bicycle and finding no negligence on the part of Toys "R" Us that was the legal cause of the damages sustained. A motion for new trial, predicated in part on the prejudicial effect of the improper comments and closing argument of defense counsel, was denied.
As his first point on appeal, Muhammad claims that opposing counsel's remark to the jury venire suggesting the possibility of a settlement between Muhammad and the non-party manufacturer constituted reversible error. During voir dire, counsel for Toys "R" Us made the following statement:
... if we show that a Korean manufacturer made some defective brakes that we never would have checked, that looked fine when the bike was brought out, if we can show that may have contributed to this down hill accident to a boy who had been riding the bike for three daysif we can show that the Korean manufacturer may have been at fault, is anyone going to have any problems in apportioning fault to the Korean manufacturer?
Does everyone realize that they could havethey may have already settled with the manufacturer?
Muhammad's attorney immediately objected. During a bench conference, counsel for Toys "R" Us admitted he knew there had been no such settlement. The trial court issued the following instruction to the jury:
Ladies and Gentlemen, the statement that was just made a minute ago concerning you don't know if the plaintiffs have settled this thing against some Korean manufacturer, that is not an issue in this case. It is simply not an issue. It has nothing to do with this case, zero to do with this case. And the only reason that it might be a factor later on is when you apportion damages. That person is not even a party. That entity is not even a party to this lawsuit. So what he said to you, you should disregard completely, completely.
Section 768.041(3), Florida Statutes (1993), prohibits a party from disclosing to the jury that a settlement has been made with an "empty chair" (non-party responsible for plaintiff's injuries). Black v. Montgomery Elevator Co., 581 So.2d 624 (Fla. 5th DCA 1991); Henry v. Beacon Ambulance Service, Inc., 424 So.2d 914 (Fla. 4th DCA 1982) (testimony as to the fact of a settlement is inadmissible and if allowed warrants a new trial). Herein, even had Muhammad settled with the manufacturer, it would have been completely inappropriate to disclose this fact to the jury. We believe that counsel's comments were patently prejudicial and may have influenced the jury to return a verdict in favor of Toys "R" Us. See Taylor Imported Motors, Inc. v. Armstrong, 391 So.2d 786 (Fla. 4th DCA 1980) (but for the suggestion created by evidence of settlement, record might conceivably support a result contrary to that reached). Given the close question of negligence, and considering that the curative instruction provided by the court was insufficient to counteract the prejudicial effect of counsel's improper comment and may well have served to further mislead the jury, we find that counsel's remark constituted reversible error, despite the failure of Muhammad's attorney to move contemporaneously for a mistrial or to strike the jury panel. See Henry v. Beacon Ambulance Service.
We turn now to the closing arguments of counsel for Toys "R" Us. Set forth below are excerpts of the various expressions of personal opinion and improper attacks on the credibility of witnesses. The first objectionable comments emerged early in closing argument when counsel discussed the damage amount requested by Muhammad. Voicing disagreement with the figures suggested *257 by Muhammad's attorney, counsel stated "I think that's way too much based on what I've observed and not what." An objection on the basis that counsel was interjecting his personal opinion was sustained.
Next, defense counsel discussed the photographs introduced as exhibits by the plaintiff, depicting the hill down which Muharram was riding when the accident occurred. Specifically, counsel stated: "This is not a hill. That doesn't depict a hill that's so steep that he had to stop and get up on ... I don't think this is a fair." An objection to this comment was sustained and the court warned defense counsel to keep his personal beliefs and opinions to himself.
Next, counsel reminded the jury of the evidence elicited at trial that Mrs. Muhammad had returned to Toys "R" Us shortly after Muharram's accident and had purchased a second bicycle, this one for Muhammad. With regard to this evidence, counsel related the following personal anecdote about his wife and his daughter Dora:
I'm going to tell you a little story. My wife loves to shop at Dillard's. About a year ago Dora (phonetic), the one I told you never gave us any problems, she's shopping. I'm with my wife. And she's kind of in tears. You could tell she was upset. She's 11 years old. I asked, you know what's wrong. Well, Dora had a purse that she bought at Dillard's two weeks before. One of the clerks had accused her, questioned her, thinking that she had stolen it. The clerk wasn't being mean. It was an accident. You know, it looked like the one she had. Well, let me tell you something, I seen [sic] something that is the most powerful thing you could ever see, and that's a mother's protection for her child. My wife is one of the sweetest, most demure persons. It was nasty. She grabbed my daughter. She went and she said
Plaintiff's counsel interposed an objection, which the trial judge sustained, directing counsel to make his point, following which defense counsel added the following:
The point is my wife has not gone back to Dillard's for a year. Do you think if Mr. Muhammad, if Mrs. Muhammad thought the next day that those brakes atToys "R" Us did something incorrect, do you think she would have bought the bike six weeks later? Whywhen she was coming from Bridgewood, why didn't she go to Wal-Mart, you heard that, and buy American? Why did she go the extra distance to go to Toys "R" Us? Why didn't she go to Kmart than go to Toys "R" Us? Why didn't she go to Sears than go to Toys "R" Us? Those are closer. Do you think her husband blamed Toys "R" Us when he picked up that bike six weeks later? No, he did not.
No further objection was made.
Immediately after sharing this personal incident, defense counsel turned to a discussion of plaintiff's expert witness, who testified via deposition that the bicycle's braking components had been improperly assembled and adjusted. With regard to this witness's testimony, counsel stated:
I will give you 3,000 reasons why he testified about that bike; that's what he got paid. You heard that, oh, 2,500, 3,000. I don't know what I charged for that. I submit the evidence shows that Mr. Green on any bike accident would say, yeah, something was wrong with that bike. Yes, something was wrong with that bike. But you knowand, of course, Mr. Loehr saidwell, we're taking out the thing he said most importantly, that's not the evidence, about this being designed wrong, even though his own expert said that. That was so ludicrous even Mr. Loehr couldn't bring it up. It was so ludicrous that they didn't even bring him down here. They take and spend $3,000.00
Counsel for Muhammad objected, at which point counsel for Toys "R" Us stated outside the presence of the jury that he wished to "backtrack" from any suggestion to the jury that deposition testimony should not be allocated the same weight as live testimony. Counsel for Muhammad then moved for a mistrial based upon the combined effect of all of the previously objected-to comments. The motion for mistrial was denied, but the court did instruct the jury that deposition testimony was to be given the same weight as live testimony.
*258 We begin our analysis of the foregoing remarks with the following admonition contained in the Rules Regulating the Florida Bar governing professional conduct. Rule 4-3.4(e) provides that a lawyer shall not:
(e) In trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.
In Miami Coin-O-Wash, Inc. v. McGough, 195 So.2d 227 (Fla. 3d DCA 1967), the court stated, "An attorney should not assert in argument his personal belief in his client nor in the justice of his cause. (Citations omitted.) By doing so, an attorney removes himself from his position as an advocate and as an officer of the court and, in effect, becomes an additional witness for his client, not subject to cross examination. His knowledge of the case is purely hearsay or opinion evidence and would not be admissible from any witness." Id. at 229. A lawyer's expression of his personal opinion as to the credibility of a witness, or of his personal knowledge of facts, is fundamentally improper. Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993). While attorneys are given broad latitude in closing arguments, remarks must be confined to the evidence and to the issues and inferences that can be drawn from the evidence. Riggins v. Mariner Boat Works, Inc., 545 So.2d 430 (Fla. 2d DCA 1989).
We agree that counsel's anecdotal commentary, comparing the shopping incident with his wife and daughter to the Muhammad family's purchase of a second bicycle, strayed perilously near the realm of impermissible illustration and constituted an improper attack upon the credibility of the Muhammads. Standing alone, these comments would not warrant reversal. However, we believe counsel "pushed the envelope" of propriety. Such irrelevant familial rhetoric must not be condoned.
Next, the suggestion that the theory of Muhammad's expert witness was so ludicrous that the witness did not bother to appear to testify in person is violative of rule 4-3.4(e), in that it constitutes counsel's personal opinion as to the justness of the cause and the credibility of the witness. See Sacred Heart Hosp. of Pensacola v. Stone, 650 So.2d 676 (Fla. 1st DCA), rev. denied, 659 So.2d 1089 (Fla.1995). The credibility of a witness is for the jury to determine. While evidence may be introduced to impeach a witness's testimony, opposing counsel should not do so in terms of his own opinion. Silva v. Nightingale. See e.g., Walt Disney World Co. v. Blalock, 640 So.2d 1156 (Fla. 5th DCA 1994) (new trial ordered where plaintiff's counsel referred sarcastically to witnesses as "a good soldier" or "this joker" and to defendant as "some nickel and dime carnival"); Venning v. Roe, 616 So.2d 604 (Fla. 2d DCA 1993) (new trial ordered where defense counsel called plaintiff's doctor "nothing more than an unqualified doctor who prostitutes himself ... for the benefit of lawyers"); Stokes v. Wet `N Wild, Inc., 523 So.2d 181 (Fla. 5th DCA 1988). Herein, counsel's comments were especially prejudicial in light of his improper remark that the witness failed to appear to testify live. Although the judge issued a curative instruction, it is debatable whether the comment was erased from the jurors' minds.
Last, counsel's personal comments with regard to the photographs of the scene and the damage amount prayed for violated rule 4-3.4(e) and, in essence, accused the plaintiff of perpetrating a fraud upon the court and jury. Comments similar to these were recently condemned in Owens Corning Fiberglas Corporation v. Morse, 653 So.2d 409 (Fla. 3d DCA), rev. denied, 662 So.2d 932 (Fla.1995).
A new trial is required regardless of the want of an objection where an attorney's prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing the jury's calm and dispassionate consideration of the evidence and the merits. Pippin v. Latosynski, 622 So.2d 566 (Fla. 1st DCA 1993); Silva v. Nightingale. Sub judice, a review of the record demonstrates that Muhammad's attorney did not sit idly by without objecting and obtaining rulings on most of the objectionable remarks. Although *259 warned repeatedly, counsel for Toys "R" Us overstepped the boundaries of advocacy in expressing his personal views before the jury. Despite the trial court's rulings sustaining some of the objections, and despite the curative instructions issued, the collective import of counsel's personal injections, and irrelevant and inflammatory remarks, was so extensive as to have prejudicially pervaded the entire trial, precluding the jury's rational consideration of the evidence and resulting in an unfair trial. Neither rebuke nor a retraction of the comments would have served to destroy their sinister and prejudicial influence. Owens. As such, we are compelled to reverse and remand this matter for a new trial.[1]
JOANOS and VAN NORTWICK, JJ., concur.
NOTES
[1] In light of the propensity of appellate courts to reverse where an attorney's conduct violates the rules of professional conduct, trial judges are advised to take appropriate measures to prevent such conduct. See Pippin v. Latosynski, 622 So.2d 566 (Fla. 1st DCA 1993); Bellsouth Human Resources Admin. Inc. v. Colatarci, 641 So.2d 427 (Fla. 4th DCA 1994); Murphy v. Murphy, 622 So.2d 99 (Fla. 2d DCA 1993). As emphasized in Eichelkraut v. Kash N' Karry Food Stores, Inc., 644 So.2d 90 (Fla.2d DCA 1994), any unseemly conduct that lowers the professional reputation of the Bar and brings disrepute to our judicial system must be curtailed. See also the specially concurring opinion in Olbek v. Kraut, 650 So.2d 1138 (Fla. 5th DCA 1995), wherein Judge Griffin articulates the frustration of the appellate courts and the diminishing level of tolerance with the type and quality of final arguments in jury cases:

The number of recent opinions on this issue (and reversals on this basis) is significant but not surprising. My own guess is that this is due less to a deterioration in ethical standards than to ignorance, poor training and lack of courtroom experience on the part of many trial lawyers. It also appears that the law pertaining to closing argument is growing in complexity.... Clearly this is an area where training of counsel and of the judiciary is badly needed in order to prevent the waste of judicial resources, the squandering of juror time and effort, and the expense of retrial incurred by the litigants.
Id. at 1138-1139.