874 So.2d 701 (2004)
Diane Mary BOCHER and Stephanie Dawn McMurray, Appellants,
v.
Jeffrey Douglas GLASS and Ellen C. Glass, as co-personal representatives of the estate of Jeffrey Douglas Glass, Jr., deceased, Appellees.
No. 1D02-4105.
District Court of Appeal of Florida, First District.
May 28, 2004.
J. Stephen O'Hara, Jr., and Diane G. Cassaro, of O'Hara, Spradley & Waters, Jacksonville, for Appellants.
Fred M. Abbott and David M. Wiesenfeld of Abbott & Wiesenfeld, P.A., Jacksonville, and Michael J. Korn of Korn & Zehmer, P.A., Jacksonville, for Appellees.
*702 KAHN, J.
Appellants, Diane Bocher and Stephanie McMurray, appeal a $3 million jury award to appellees, Jeffrey and Ellen Glass, personal representatives of the estate of their deceased son, Jeffrey Glass, Jr. Appellants claim that the trial court erred in denying several motions for mistrial and a motion for a new trial based upon improper, and objected to, comments by the plaintiffs' attorney throughout the course of the trial below. Our review of the record shows that the plaintiffs' attorney conducted himself in a manner designed to inflame the emotions of the jury rather than prompt a "logical analysis of the evidence in light of the applicable law." See Murphy v. Int'l Robotic Systems, 766 So.2d 1010, 1028 (Fla.2000) (quoting Bertolotti v. State, 476 So.2d 130 (Fla.1985)). Although counsel's improper comments would not necessarily require reversal if considered in isolation, we find the cumulative effect of the comments sufficient to have deprived appellants of a fair trial. See Muhammad v. Toys "R" Us, Inc., 668 So.2d 254, 259 (Fla. 1st DCA 1996) (holding that the "collective import of counsel's personal injections, and irrelevant and inflammatory remarks, was so extensive as to have prejudicially pervaded the entire trial"); see also F.J.W. Enterprises, Inc. v. Johnson, 746 So.2d 1145, 1147 (Fla. 5th DCA 1999); Walt Disney World Co. v. Blalock, 640 So.2d 1156, 1158 (Fla. 5th DCA 1994). Accordingly, we reverse and remand for a new trial. We find no reversible error in appellant's other point on appeal concerning admissibility of certain evidence proffered by the defense at trial.
This case arose out of a motor vehicle accident involving Jeffrey Glass, Jr. and Stephanie McMurray. Nineteen-year old Jeffrey died when his motorcycle crashed into the truck driven by Ms. McMurray. The issues for the jury's consideration should have been limited to the respective degrees of negligence of Jeffrey and Ms. McMurray and the extent of damages to be awarded to Jeffrey's parents and his estate. Plaintiffs' trial counsel, Mr. Abbott, however, injected a continuous stream of personal commentary from voir dire through to closing arguments rather than focusing on the discrete issues and the evidence.
During voir dire, plaintiffs' counsel made comments that could have only been designed to ingratiate himself to the potential jurors and focus their attention on irrelevant matters. See Kelley v. Mutnich, 481 So.2d 999, 1000 (Fla. 4th DCA 1986) ("[A]ttempts to curry favor with members of the jury are unprofessional and should be met by rebuke."). Plaintiffs' counsel identified himself as having a child apparently near the age of the decedent. The appellants unsuccessfully objected and moved for a mistrial. Counsel then segued to a series of comments implying that appellants would unfairly ask the jury to second guess the decedent's actions while, at the same time, telling the jury that he knew all about "armchair" quarterbacks because he used to be a professional football player. After the trial court sustained an objection to counsel's statement of personal belief regarding the unfairness of armchair quarterbacking, counsel went on to tell the jury that, "I'm pretty much a straight ahead guy." Once again, the trial court sustained appellants' objections. Counsel moved on to a series of questions relating to the jurors' views on owning a confederate flag. He told the venire that the decedent had owned one but was not a racist and that he had black friends and white friends. Upon objection, the trial court instructed plaintiffs' counsel to stop testifying. Cf. Rockman v. Barnes, 672 So.2d 890, 891 (Fla. 1st DCA 1996) ("We definitely do not condone the injection *703 of the personal opinion of plaintiff's counsel into argument before the jury."). Finally, counsel told the jury, "I want to go back into the Florida Times Union. About every thirty days they publish an article in Section B in the editorial section that has to do with frivolous lawsuits." Appellants objected and moved for a mistrial on the basis that plaintiffs' counsel was once again testifying to the jury. The trial court sustained the objection but denied the mistrial.
During the trial, appellants' expert witness, Michael Dobbs, volunteered that he was going to donate his fee to charity. Plaintiffs' counsel noted that this was inconsistent with what Dobbs had stated during his deposition. Dobbs stated that he had had a change of heart. Plaintiffs' counsel replied inappropriately, "I bet you did." See R. Regulating Fla. Bar 4-3.4(e) (barring a lawyer from stating a personal opinion as to the credibility of a witness). The trial court sustained appellants' objection and gave a curative instruction.
During closing argument, plaintiffs' counsel told the jury that if a "magic button" were placed in front of Mrs. Williams, a juror, and $6 million were placed in front of Mr. Brooks, another juror, the plaintiffs would walk past the money and press the button to bring their son back. Appellants' counsel objected, arguing this constituted an impermissible "golden rule" argument. See Cummins Alabama, Inc. v. Allbritten, 548 So.2d 258, 263 (Fla. 1st DCA 1989) (observing that a "golden rule" argument requires the jury "to put themselves in the shoes of one of the parties, and is impermissible because it encourages the jurors to decide the case on the basis of personal interest and bias rather than on the evidence"). The trial court overruled the objection.
Although we recognize that the "magic button" argument did not explicitly ask the jurors how much they would want to receive had their own child died in an accident, we find it was nonetheless improper. The only conceivable purpose behind counsel's argument was to suggest that jurors imagine themselves in the place of Jeffrey's parents. Counsel utilized jurors' actual names, and even set up the jury box as a prop for the "magic button" and the $6 million. "Golden rule" arguments are improper because they depend upon inflaming the passions of the jury and inducing fear and self interest. See Tremblay v. Santa Rosa County, 688 So.2d 985, 987 (Fla. 1st DCA 1997). The "magic button" argument had the same effect. If jurors are to remain fair decision-makers, the trial court must guard against a deliberate act of counsel that serves to put the jury center stage in the drama that should be the trial.
Plaintiffs' counsel next moved into a "value of human life" argument. See Wilbur v. Hightower, 778 So.2d 381, 383 (Fla. 4th DCA 2001) (defining a "value of human life" argument as one which asks the jury to "place a monetary value on the life of the decedent"). He began, "I want to talk a little about money in our society. Our society values paint on a canvas to the tune of $82.5 million." At that point, appellants objected and the trial court sustained the objection, warning plaintiffs' counsel to abandon the argument.
Finally, during rebuttal, plaintiffs' counsel attempted to relate a story about him and his grandfather walking in the Florida woods when he was a child. Appellants objected and the trial court sustained the objection. See Muhammad, 668 So.2d at 258 (noting that "irrelevant familial rhetoric must not be condoned"). Counsel then began telling a story about a hypothetical young boy and his grandfather walking through the woods. Appellants once again objected, and once again the trial court *704 sustained the objection. Finally, plaintiffs' counsel got to the point and advised the jury not to be distracted by "rabbit trails" and to focus on the facts of the case.
After the jury returned a verdict in favor of the plaintiffs, appellants moved for a new trial citing the conduct of plaintiffs' counsel. The trial court denied the motion. This court reviews the trial court's denial of appellants' motion for new trial under an abuse of discretion standard. See Roach v. CSX Transp., Inc., 598 So.2d 246, 249 (Fla. 1st DCA 1992). Although the trial court's ruling is entitled to substantial deference, there is a point where the "totality of all errors and improprieties" are "pervasive enough to raise doubts as to the overall fairness of the trial court proceedings." See Manhardt v. Tamton, 832 So.2d 129, 133 (Fla. 2d DCA 2002). Our review of the foregoing incidents convinces us that although plaintiffs' experienced trial counsel understood the bounds of appropriate conduct, he exceeded those bounds repeatedly.
In applying the abuse of discretion standard, we have considered the shift in dynamics occasioned by the supreme court's decision in Murphy v. International Robotic Systems. There, the court considered unobjected-to comments during closing arguments and the standard for granting a new trial. See Murphy, 766 So.2d at 1028-31. The court held:
... before a complaining party may receive a new trial based on unobjected-to closing argument, the party must establish that the argument being challenged was improper, harmful, incurable, and so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial. Should the trial court find that these criteria have been established, the court must enter an order granting a new trial specifically identifying both the improper arguments of counsel and the actions of the jury resulting from those arguments. Finally, an appellate court must employ an abuse of discretion standard of review when considering the correctness of the trial court's grant or denial of a new trial based on unobjected-to closing argument. Although we have not absolutely "closed the door" on appellate review of unpreserved challenges to closing argument, we have come as close to doing so as we believe consistent with notions of due process which deserve public trust in the judicial system.
Id. at 1031.
Murphy's lesson to trial counsel is cleara remedy will almost always be tied to contemporaneous objection. Here, counsel for appellants reacted appropriately to Murphy by imposing numerous objections. Although the trial court sustained most of these objections, nothing deterred appellees' counsel. By scrupulously following the law after Murphy, appellants' counsel risked alienating the jury with repeated objections. Jurors cannot be expected to understand the basis of counsel's repeated objections. All that is apparent to jurors placed in this position is that frequent objections and sidebar conferences prolong their service, and perhaps limit the information available to the jury. Thus, counsel's repeated objections to the same type of behavior may well lead the jury to infer that one side of the case is trying to hide or disguise matters that would be useful to the jury.
Perhaps if counsel were given free rein, he or she could build exceptional rapport with jurors, and they, in turn, would find a trial far more entertaining, far more like the television version of the lawyer's trade. That, however, is not the function of a jury trial. See Muhammad, 668 So.2d at 258 ("While attorneys are given broad latitude in closing arguments, remarks must be *705 confined to the evidence and to the issues and inferences that can be drawn from the evidence."). To this end, jurors in every civil trial are told by the judge:
In reaching your verdict[s], you are not to be swayed from the performance of your duty by prejudice, sympathy or any other sentiment for or against any party. Your verdict[s] must be based on the evidence that has been received and the law on which I have instructed you."
Fla. Std. Jury Instr. (Civ.) 7.1. If we are interested in the integrity of the process by which a jury determines disputed facts, including damages in personal injury cases, we must not allow this instruction to become mere window dressing for a procedure that, without proper demarcation by a trial judge, can be steered all too easily into a morass of prejudice, sympathy, bias, and emotion.
The burden upon the complaining party is high. Nevertheless, and particularly in light of counsel's duties after the Murphy decision, we find that appellants have carried this burden.
REVERSED and REMANDED for a new trial.
WEBSTER and LEWIS, JJ., concur.