979 So.2d 997 (2008)
SDG DADELAND ASSOCIATES, INC., etc., et al., Appellants,
v.
Violet C. ANTHONY, Appellee.
No. 3D05-2666.
District Court of Appeal of Florida, Third District.
February 13, 2008.
Rehearing and Rehearing Denied April 22, 2008.
*998 Luks, Santaniello, Perez, Petrillo & Gold and Paul S. Jones and Jack D. Luks and James P. Waczewski, Orlando, for appellants.
Simon & D'Alemberte and Ronald Simon, Miami; Bambi G. Blum, Miami, for appellee.
Before WELLS, CORTIÑAS, and LAGOA, JJ.
Rehearing and Rehearing En Banc Denied April 22, 2008.
PER CURIAM.
Appellants SDG Dadeland Associates, Inc. d/b/a Dadeland Mall, Unicco Service Company and Management Associates, Inc. (collectively "Dadeland") appeal from a final judgment rendered in favor of Appellee Violet C. Anthony, and request a new trial. For the following reasons, we reverse and remand for a new trial.
I. FACTS
On September 11, 2002, Anthony, a nurse accompanying a patient, sustained injuries when she fell to the ground while exiting Dadeland Mall with her patient. *999 The cause of the fall was disputed at trial. Anthony admitted that she was not looking where she was walking, but was instead paying attention to her patient. Anthony asserted that she slipped on water, while Dadeland asserted that she tripped over a warning cone that had been placed to alert customers to the water.[1]
Unfortunately, a simple slip and fall case unraveled into an improper attack on Dadeland, its witnesses, and its defense counsel. This Court has repeatedly denounced such litigation tactics. Beginning in voir dire and ending with rebuttal closing, Anthony's counsel, Ronald Simon, Esq.,[2] engaged in a series of improper and unprofessional attacks on Dadeland and its counsel that included the following allegations:
(1) failure to produce an incident report;
(2) failure to produce all photographs depicting the scene of the accident;
(3) defense counsel's collusion with witnesses; and
(4) a general frivolous defense argument.
Prior to trial, the trial court excluded any reference to a privileged incident report that had been prepared by Dadeland. The trial court further ruled that only witnesses who could independently recall the accident scene, without reference to the report, could testify as to what occurred. Notwithstanding this ruling, during his opening statement delivered moments after the trial court's ruling, Mr. Simon began an assault on Dadeland's pre-trial discovery practices by telling the jury that an incident report existed, but that Dadeland failed to produce the report because it asserted that the report was privileged. Pursuant to a defense objection, the trial court ordered Mr. Simon to refrain from making further reference to the report. Despite this instruction, during the direct examination of a former Dadeland employee, Mr. Simon implied that Dadeland had violated its policies by not creating an incident report. Pursuant to an objection, the trial court found Mr. Simon's statements to be harmless, but again cautioned him not to mention the report.
Continuing with his "hiding the evidence" theme, Mr. Simon during his opening told the jury that Dadeland likely had taken additional photographs but had not disclosed their existence. These alleged photographs were central to Mr. Simon's attempt to persuade the jury that Dadeland had concealed evidence in this lawsuit. Further, Simon insinuated in his redirect examination of Dadeland employee John Aleman that defense counsel had instructed Aleman on how to describe the photographs to best suit the defense.[3] Dadeland moved for a mistrial, which motion was denied.[4]
The trial court further instructed both parties not to discuss any issue relating to discovery during closing argument. Mr. *1000 Simon, however, twice alluded to a possible violation by telling the jurors that "[w]e don't know" if there really were only two photographs.[5] And after pondering why witnesses would "try to come up with an excuse," Mr. Simon referred the jury back to his voir dire comments regarding "frivolous defenses." He told the jury, "[y]ou never read about frivolous defenses. Well you got to see one and hear one up close and personal."[6]
Further stressing the theme that Dadeland and its counsel had concealed evidence, Mr. Simon during closing argument provided the jury with his opinion that Dadeland had placed a warning cone next to Anthony after she fell and that Dadeland's defense belonged in the "garbage."[7] He theorized that Dadeland had done so prior to photographing the scene in order to make it appear as if Anthony had tripped over the cone. Mr. Simon asked, "[c]an you come into a courtroom seeking the truth and start with one deceit and finish with a bigger one?"[8] And in reference to testimony from Dadeland's general manager, Mr. Simon told the jury that Dadeland employees had perjured themselves:
Their defense is in the toilet, and they're trying to save the day by trying to change his testimony, changing everything he said under oath a few months ago. . . . And before that, . . . when we propounded the discovery, you've heard about that, the interrogatories  remember the written questions? We . . . asked them to please provide us with the incident reports or the names of the people who've fallen there before.
Mr. Simon continued his closing argument by telling the jury that defense counsel "knows they are liable," but "[h]e's got to protect the wallet of the corporate defendant."[9] In rebuttal closing, Mr. Simon concluded by telling a story about a disabled boy who chooses to take care of an injured puppy ("the Puppy Story")[10]:
How are you going to do that when you go back into the jury room? And I'm trying to think how do I convey this to you so you'll understand what it is to go through what this lady has gone through and what she will have to go through when we all leave, when we go back to our families and ways of life and all of the Christmases and holidays she's had to celebrate in casts and in therapy? How do I do that? How do you go back and make this right?
* * * *
A little boy got $8, and he wants a puppy, and he goes into a puppy store *1001 because it has a big sign that says puppies for sale. And the owner comes out, and the boys [sic] says, "I only have $8." And the owner says, "Let me show you the puppies." And he opens up the door, and five or six little white puffy puppies come running out except the one in the back. The one in the back comes limping out, and the owner goes, "Which one of these do you want?" The little boy says, "I want the one in the back that's limping." And the owner says, "Why would you want the one in the back that's limping? Take one of these healthy puppies. That one has a bad leg. He's been injected. He's had surgery. It is no good." The little boy says, "I want that one." And the owner says, "Why?" And the boy lifted up his pant leg with a brace on it. "Because," he says, "that puppy is going to need somebody that knows what it is like to feel that bad."
II. STANDARD OF REVIEW
We review the denial of a motion for new trial for abuse of discretion. See Southwin, Inc. v. Verde, 806 So.2d 586, 587-88 (Fla. 3d DCA 2002); Salnave v. Pub. Health Trust of Dade County, 624 So.2d 282 (Fla. 3d DCA 1993); Jones v. Airport Rent-A-Car, Inc., 342 So.2d 104 (Fla. 3d DCA 1977). A trial court's discretion regarding counsel's improper arguments to the jury is guided by whether the comments and arguments were "highly prejudicial and inflammatory." Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580, 585 (Fla. 2d DCA 1996)(disapproved of on other grounds by Murphy v. Int'l Robotic Sys., Inc., 766 So.2d 1010, 1013 (Fla.2000)).
III. ANALYSIS
It is well settled that statements by counsel in closing argument which accuse opposing counsel of hiding evidence and of fraudulently preventing the presentation of relevant evidence constitute reversible error. See generally Wall v. Costco Wholesale Corp., 857 So.2d 975 (Fla. 3d DCA 2003) (reversal required because of comments made by defense counsel regarding the plaintiff's failure to call her daughter to testify where defense counsel knew daughter was estranged from parents); Hernandez v. Home Depot U.S.A., Inc., 695 So.2d 484, 485-86 (Fla. 3d DCA 1997) (reversal required because defense counsel, after succeeding in excluding proffered testimony of plaintiff's expert that defendant had created an unsafe condition, in closing argument "whipsawed the plaintiff for not producing that very testimony"); George v. Mann, 622 So.2d 151, 152 (Fla. 3d DCA 1993) ("Defense counsel repeatedly referred to Mrs. George's lawsuit pain, and argued that she had set up the entire lawsuit, implying that she was a liar and was perpetrating a fraud upon the court. Defense counsel also argued to the jury that Mrs. George had concealed evidence and violated discovery orders. This line of argument, even if not objected to, constitutes reversible error."); Emerson Elec. Co. v. Garcia, 623 So.2d 523 (Fla. 3d DCA 1993) (new trial ordered where plaintiff's counsel accused defense counsel of fraud, hiding evidence, and putting up roadblocks to discovery).
We find that given the absence of any evidence showing that either Dadeland or its counsel hid evidence or acted improperly, any argument by Plaintiff's counsel implying that defense counsel was hiding evidence was both egregious and prejudicial to Dadeland. See Johnnides v. Amoco Oil Co., 778 So.2d 443 (Fla. 3d DCA 2001). Indeed, this Court in the past has characterized such an argument as "disingenuous" and "misleading" and has repeatedly disapproved of this type of *1002 approach to lawyering and litigation. See Hernandez, 695 So.2d at 486.
Although admonished by the trial judge not to raise discovery matters in his closing argument, Mr. Simon chose to relate to the jury the difficulties he had in scheduling the deposition of Jesus Teran, the security guard who first responded to the accident.[11] Mr. Simon further ignored the trial court's directive by arguing to the jury, without any evidentiary support, that Dadeland refused to turn over in discovery additional photographs that would have been harmful to its defense.[12]
While contemporaneous objections were made to Mr. Simon's comments regarding discovery matters, such an objection is not necessary if the comment constitutes fundamental error or extinguished Dadeland's right to a fair trial. Owens Corning Fiberglas Corp. v. Morse, 653 So.2d 409, 410 (Fla. 3d DCA 1995). Here, no discovery violation was ever proven. Moreover, even if a violation had occurred, "an appropriate sanction was a matter for the court and not for the jury." Emerson Elec. Co., 623 So.2d at 525. When viewed in the overall context of Mr. Simon's closing argument, and those comments to which objections were made, we find that fundamental error did occur. See, e.g., Muhammad v. Toys "R" Us, Inc., 668 So.2d 254, 258 (Fla. 1st DCA 1996).
Moreover, Mr. Simon expressed his view that every testifying witness had lied regarding when the warning cone appeared at the accident scene. Indeed, Mr. Simon argued, without any evidentiary support, that the warning cone was placed in the area after Anthony's slip and fall.[13] It is axiomatic that an attorney may not provide such opinions to the jury without any evidentiary support. See Bloch v. Addis, 493 So.2d 539, 541 (Fla. 3d DCA 1986). Even Anthony was unsure as to whether the cone had been there before she fell. Disregarding the evidence, however, Mr. Simon offered his own opinion as to the warning cone's placement and the likelihood of additional photographs. He further told the jury that it had witnessed a frivolous defense "up close and personal." Standing alone, these personal opinions require a new trial. See, e.g., Kaas v. Atlas Chem. Co., 623 So.2d 525, 526 (Fla. 3d DCA 1993).
As in Morse, 653 So.2d at 411, Mr. Simon's unsubstantiated comments accused Dadeland and its counsel of perpetuating a fraud upon the court by hiding evidence. Indeed, Mr. Simon told the jury that defense counsel "knows" Dadeland is liable, but must "protect the wallet of the corporate defendant." "While attorneys are given broad latitude in closing arguments, remarks must be confined to the evidence and to the issues and inferences *1003 that can be drawn from the evidence." Muhammad, 668 So.2d at 258. Even had no contemporaneous objection been made to any of these comments, this Court has long held that "arguments like these fall squarely within that category of fundamental error  requiring no preservation below  in which the basic right to a fair and legitimate trial has been fatally compromised." Kaas, 623 So.2d at 526. See, e.g., Morse, 653 So.2d at 411; Carnival Cruise Lines, Inc. v. Rosania, 546 So.2d 736 (Fla. 3d DCA 1989); Borden, Inc. v. Young, 479 So.2d 850, 851-52 (Fla. 3d DCA 1985). Likewise, we find the "collective import," of Mr. Simon's comments to be unacceptable and unprofessional. Muhammad, 668 So.2d at 258; Martino v. Metropolitan Dade County, 655 So.2d 151, 152 (Fla. 3d DCA 1995). "As this court has stated on numerous occasions, these inflammatory and prejudicial remarks will not be condoned," Morse, 653 So.2d at 411, and "we will not supinely ratify the result of a trial like the present one." Borden, 479 So.2d at 852.
Finally, we also find that the Puppy Story, which Mr. Simon conveyed to the jury during closing, constituted an improper Golden Rule argument. A "Golden Rule" argument asks the jurors "to place themselves in the plaintiffs' position and urge[s] them to award an amount of money they would desire if they had been the victims." Coral Gables Hosp., Inc. v. Zabala, 520 So.2d 653 (Fla. 3d DCA 1988). Such arguments constitute reversible error, if a contemporaneous objection is made, because they strike at the very heart of our justice system:
It is hard to conceive of anything that would more quickly destroy the structure of rules and principles which have been accepted by the courts as the standards for measuring damages . . . than for the juries to award damages in accordance with the standard of what they themselves would want if they or a loved one had received the injuries suffered by a plaintiff. In some cases, indeed, many a juror would feel that all the money in the world could not compensate him for such an injury. . . . Such a notion as this  the identifying of the juror with a plaintiff's injuries  could hardly fail to result in injustice under our law. . . .
Bullock v. Branch, 130 So.2d 74, 76 (Fla. 1st DCA 1961), disapproved of on other grounds, Murphy v. Int'l Robotic Sys., Inc., 766 So.2d 1010, 1029 (Fla.2000).
The classic Golden Rule argument specifically requests the jurors to imagine themselves as the injured party, and to award damages as if they were the injured party. See State Farm Mut. Auto. Ins. Co. v. Curry, 608 So.2d 587 (Fla. 3d DCA 1992); Metropolitan Dade County v. Zapata, 601 So.2d 239, 241-42 (Fla. 3d DCA 1992). Even when an attorney does not explicitly ask the jurors how much money they would wish to receive in the plaintiff's position, comments may violate the Golden Rule if they implicitly suggest that the jury place itself in the plaintiff's position. E.g., Bocher v. Glass, 874 So.2d 701, 703 (Fla. 1st DCA 2004).
In Bocher, a wrongful death lawsuit, plaintiffs' counsel told the jury that if plaintiffs were given the choice between millions of dollars and a "magic button" that could bring their child back, the plaintiffs would quickly push the button. Id. The First District held that the statement constituted reversible error, even though the comment, like the Puppy Story, did not directly ask the jury to place itself in the plaintiffs' position. Id. However, just like the Puppy Story, "[t]he only conceivable purpose behind counsel's argument was to suggest that jurors imagine themselves in the place of" Anthony. Id. Moreover, Mr. Simon told this story while discussing *1004 damages and immediately after positing the question "[h]ow do you go back and make this right?" Within that context, there can be no doubt that the Puppy Story "str[uck] at the sensitive area of financial responsibility and hypothetically request[ed] the jury to consider how much they would wish to receive in a similar situation." Zapata, 601 So.2d at 241.
Based upon a review of the record, we conclude that Dadeland was deprived of a fair trial by the collective import of Simon's trial conduct.[14] A new trial is, therefore, warranted.
Reversed and remanded for a new trial in accordance with this opinion.
NOTES
[1] Dadeland also asserted a comparative negligence defense, i.e., that Anthony may have simply slipped on the water without noticing that the cone was present.
[2] During voir dire, Mr. Simon asked the prospective jurors whether they had heard of frivolous defendants, setting the stage for his trial strategy: impugning Dadeland's and its counsel's character.
[3] Prior to closing arguments, however, the trial court instructed the jury that it is common for witnesses to talk with the lawyers.
[4] The Dadeland employee who photographed the accident scene could not remember how many photographs he took, and after a lengthy sidebar conference the trial court allowed Mr. Simon to ask if the employee had an independent recollection as to how many photographs were taken. The answer was "no."
[5] Dadeland did not contemporaneously object to this comment.
[6] Dadeland objected to this comment, but the objection was overruled.
[7] Specifically, Simon argued:

Now, I don't know how you all grew up, and I don't know where you all came from. But where I came from, you don't have to be under oath to tell the truth. And yet we're in a courtroom under oath and we're still not getting it. . . . [A]ll I can suggest to you all is that when you think about that and you think about their defense and you think about whether that cone was out there like they say and she tripped over it, you ought to put it in the garbage where it belongs.
[8] Dadeland's objection to this comment was overruled.
[9] Dadeland's objection to these comments was sustained, but the trial court did not give a curative instruction.
[10] Dadeland's objection to this story as an improper Golden Rule argument was sustained, but Dadeland's pre-verdict motion for a mistrial and post-verdict motion for a new trial were denied.
[11] The trial court sustained Dadeland's objection but did not give a curative instruction.
[12] During rebuttal closing, Mr. Simon insinuated that photographs were taken but not provided to him.

I don't know which one they took first. I don't know if there were five others that were bad for them. I don't know that. They said they usually take three to five. They take the ones that are best for their case.
The trial court sustained Dadeland's objection and offered a curative instruction.
[13] Specifically, the following argument was made during closing:

MR. SIMON: [T]o come in here and know there is a spill and walk over after an accident and put the cone down because you know you can't win the case if she falls on a spill that you didn't clean up that you didn't find, that you didn't safeguard, you didn't barricade, let's put the cone there and she tripped over there.
[14] Apparently, Mr. Simon has engaged in similar but less pervasive conduct before other courts. See Target Stores v. Detje, 833 So.2d 844, 846 (Fla. 4th DCA 2002) (Klein, J., dissenting) (Mr. Simon's arguments "were clearly improper and unethical").