IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-5276

DARRELL EDWARD BOYLES,
PERSONAL
REPRESENTATIVE,

    Appellant,

v.

DILLARD'S INC.,

    Appellee.

_____/

Opinion filed July 25, 2016.

An appeal from the Circuit Court for Clay County.
Dan Wilensky, Judge.

John S. Mills and Andrew D. Manko of The Mills Firm, Tallahassee; Edward T. Radloff and James W. Radloff of Radloff and Radloff, P.A., Jacksonville; Eric S. Block and Fraz Ahmed of Law Offices of Eric S. Block, P.A., Jacksonville, for Appellant.

Hinda Klein and Elizabeth Ann Izquierdo of Conroy Simberg, Hollywood; Eric M. Thorn of Conroy Simberg, Jacksonville, for Appellee.


ROBERTS, C.J.

        Appellant, personal representative of the estate of decedent Lauren Robinson

(the plaintiff below), appeals a final judgment for the defendant, appellee Dillard's,

Inc., alleging multiple errors on the part of the trial court and numerous instances of

misconduct at trial on the part of defense counsel and arguing that these effectively denied plaintiff a fair trial. Appellant also appeals the trial court's denial of plaintiff's motion for directed verdict and the trial court's admission of delta-v testimony by defendant's expert accident reconstructionist, Dr. James R. Ipser. We affirm, without discussion, the trial court's denial of plaintiff's motion for directed verdict and affirm, with discussion, the admission of Dr. Ipser's delta-v testimony. However, for the reasons given below, we hold that defense counsel's misconduct was so prejudicial as to warrant a new trial, and we reverse the verdict on this basis.

**Background**

Plaintiff was involved in a traffic accident in which her vehicle partially collided with a Dillard's delivery van operated by Timothy Davis, an employee of Dillard's. It is undisputed that the drivers were traveling in the same lane of a two-lane highway, Mr. Davis driving directly behind plaintiff at the time of the accident, and that the left front of the Dillard's van hit the right rear of plaintiff's vehicle. Plaintiff alleged that she never left her lane and that Mr. Davis hit her car as she made a right turn into her driveway; Mr. Davis alleged that plaintiff left her lane, merging into a gore to the left of her and Mr. Davis, and had abruptly turned back into Mr. Davis's lane, leaving him without enough time to avoid a collision.

Plaintiff sued defendant for damages. After obtaining summary judgment that the accident caused permanent injuries to her shoulder, she proceeded to trial on the

2

issues of whether Mr. Davis negligently caused the accident and whether she also suffered permanent injuries to her back and neck. After a five-day trial, the jury returned a defense verdict answering "No" to the first question, which was whether defendant negligently caused the accident.

Appellant timely served post-trial motions raising each of the issues in this appeal. After a hearing, the trial court entered an order denying the post-trial motions without elaboration.

## Dr. Ipser's Delta-v Testimony

Before trial, plaintiff moved to strike or limit the testimony of Dr. Ipser, alleging, in pertinent part, that his opinions concerning delta-v (the change in velocity of the cars on impact) were inadmissible as being scientifically unreliable, irrelevant, and overly prejudicial under sections 90.702 and 90.403, Florida Statutes (2013). At a day-long hearing on the matter, Dr. Ipser testified that he was not retained by defendant to offer an opinion as to whether the forces produced by a given delta-v would have caused plaintiff to suffer injury, but that he had been retained to reconstruct the accident, to testify to the nature of the physical forces at work, and to help the jury understand the levels of those forces on the human body. The trial court allowed Dr. Ipser to testify to his calculation of delta-v. Over plaintiff's counsel's objections, Dr. Ipser did so testify at trial. During closing arguments, defense counsel referred to Dr. Ipser's testimony to argue that "this was

3

not the type of accident that the plaintiff wants you to believe it is" and that "the speed and velocity of [the] impact was minor."

According to section 90.702, Florida Statutes (2014):

> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise if: (1) the testimony is based upon sufficient facts and data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.

In addition, the trial court is permitted to take judicial notice if the expert testimony has previously been deemed reliable by an appellate court. See Booker v. Sumter Cty. Sheriff's Office/N. Am. Risk Servs., 166 So. 3d 189, 194 (Fla. 1st DCA 2015).

Appellant argues that the trial court erred in admitting Dr. Ipser's delta-v testimony because the only relevance it could possibly have had was to imply that plaintiff could not have suffered the degree of injury she alleged and that Dr. Ipser was unqualified to offer any testimony that might lead to such a conclusion. In making this argument, Appellant misconstrues the relevant case precedents. In Mattek v. White, 695 So. 2d 942, 943 (Fla. 4th DCA 1997), the Fourth District held that Dr. Ipser's "lack of medical expertise . . . render[ed] him unqualified to testify that [a] plaintiff had no permanent injury as a result of [an] accident." Our sister court did not, as Appellant insinuates, rule that jurors were not allowed to take delta-

4

v into account when determining the severity of an impact. Indeed, in <u>Bryant v. Buerman</u>, 739 So. 2d 710, 711 (Fla. 4th DCA 1999), just two years after deciding <u>Mattek</u>, the Fourth District reversed a verdict after holding that a trial court erred in prohibiting Dr. Ipser from offering expert testimony in a personal injury action. The court noted that Dr. Ipser's testimony "would have been helpful to the jury" *precisely because* it would have buttressed the defendant's argument "that [the plaintiff's] injuries could not have been caused by [a] slow-speed, low-impact accident," <u>id.</u> at 713 (emphasis added), the very sort of argument Appellant objects to Dillard's having made in the present case.

This Court herself has repeatedly held that while "a biomechanics expert is not qualified to give a medical opinion regarding the *extent* of an injury," he "is qualified to offer an opinion as to causation if the mechanism of injury falls within the field of biomechanics." <u>Gregory Council v. State</u>, 98 So. 3d 115, 116-17 (Fla. 1st DCA 2012) (citations omitted) (holding that "because the mechanism of injury (falls and shaking) fell within the field of biomechanics," a biomechanics expert who was not a medical doctor was qualified to opine that a child of the victim's height and weight could have sustained certain types of brain injuries by falling out of a day bed and that shaking alone could not have caused such injuries). <u>See also</u> <u>Maines v. Fox</u>, 2016 WL 1741950 (Fla. 1st DCA May 3, 2016).

5

Dr. Ipser's testimony below was well within these parameters; he did not render inadmissible opinions that required medical expertise, and he didn't even render *admissible* opinions as to the causal mechanisms of the sorts of injuries plaintiff suffered. To the extent defense counsel "erred" at all in proffering Dr. Ipser's testimony, it was on the side of caution and, therefore, in Appellant's favor. Accordingly, the trial court did not abuse its discretion when it allowed Dr. Ipser to testify about the physical forces involved in the accident, and defense counsel did not act improperly when he implied during closing arguments that the jury should take relevant physical forces into account when determining the effect of such on whatever injuries plaintiff suffered.

**Comments Regarding Plaintiff's Deposition During Closing Arguments**

During closing arguments, referring to plaintiff's testimony that she had tapped her brakes to take her vehicle off cruise control before turning into her driveway, defense counsel told the jury, "Why is that important? We took her deposition for hours and it never came up." Plaintiff's counsel objected and requested a sidebar, to which defense counsel replied by turning to the jury, raising his hands and exclaiming, "Well, that lasted about 12 minutes." Plaintiff's counsel moved for a mistrial, arguing that it was improper to refer to the deposition because it had not previously been introduced into evidence and that defense counsel was using this characterization of extra-record evidence to accuse plaintiff of dishonesty.

6

The trial court denied the motion for mistrial, but instructed the jury:

> [D]isregard the last statement by counsel, something to the effect that there was nothing in [Appellant's] deposition that had to do with her tapping the brakes to disengage the cruise control. Again, I will remind you again, rely on your memories of what you heard as evidence on every topic, okay?

It is undisputed that defense counsel's attempted impeachment of plaintiff's credibility by reference to alleged inconsistencies between her trial testimony and her pretrial deposition was improper, as was his open disparagement of plaintiff's counsel after the latter had registered an eminently reasonable objection to the impropriety. While a single improper remark, properly and immediately cured by an instruction by the trial court, will not necessarily constitute adequate grounds for mistrial, we find that it did so in the instant case where the issue of the defendant's liability essentially hinged on the comparative credibility of two opposing witnesses, plaintiff and Mr. Davis. A finding of harmfulness is especially appropriate when the context suggests that an error was made intentionally. See Howard v. Palmer, 123 So. 3d 1171, 1174 (Fla. 4th DCA 2013). Dillard's has failed to "demonstrate that there is no reasonable possibility that the error contributed to the verdict" and was therefore harmless. Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1256 (Fla. 2014). Furthermore, because the inadmissibility of appeal to non-record evidence during closing arguments is such a fundamental and longstanding canon of trial

7

practice and ethics, codified in rule 4-3.4 of the Rules Regulating the Florida Bar, defense counsel's violation, if not intentional, was at least grossly reckless, particularly because it was committed during closing arguments, when such improper statements are especially likely "to inflame the minds and passions of the jurors so that their verdict reflects an emotional response . . . rather than the logical analysis of the evidence in light of the applicable law." Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010, 1028 (Fla. 2000) (citing Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985)).

For these reasons, we hold that the trial court abused its discretion when it denied plaintiff's motion for mistrial.

## Additional Errors and Improprieties

Although defense counsel's improper remarks during closing argument constituted a sufficient basis for a new trial, we wish to draw attention to additional errors and improprieties that characterized these proceedings.

### *Voir Dire*

During jury selection, plaintiff's counsel essentially read the standard jury instruction regarding aggravation of pre-existing conditions and asked the *venire* whether anyone would have a problem applying that law, which would require an award for the entire condition if the jury were not ultimately able to decide what portion of the condition was a result of the aggravation. Defense counsel objected,

8

wrongly claiming in front of the *venire* that "that's not what the jury instruction says." At sidebar, the trial court mistakenly instructed plaintiff's counsel "You are specifically not allowed during *voir dire* [to question] the juror concerning the anticipated instruction or theory of law or your understanding of various legal principles." The issue of whether a trial court may deny counsel the opportunity to question the *venire* on matters of substantive law is controlled by Lavado v. State, 492 So. 2d 1322 (Fla. 1986). There, the Florida Supreme Court expressly adopted Judge Pearson's entire dissenting opinion in Lavado v. State, 469 So. 2d 917, 919-21 (Fla. 3d DCA 1985), according to which, "where a juror's attitude about a particular legal doctrine . . . is essential to a determination of whether challenges for cause or peremptory challenges are to be made, it is well settled that the scope of the voir dire properly includes questions about and references to that legal doctrine[.]" Id. at 919-20. Since Lavado was decided, this Court has consistently held that denial to counsel of the opportunity to question prospective jurors on their ability to follow the law constitutes abuse of discretion and is grounds for a new trial. See Harrison v. State, 172 So. 3d 1018 (Fla. 1st DCA 2015); Morton v. State, 667 So. 2d 463, 463 (Fla. 1st DCA 1996); Brown v. State, 614 So. 2d 12, 12 (Fla. 1st DCA 1993).

*Violation of Accident Report Privilege*

Before the start of trial, plaintiff filed a written motion *in limine* to exclude any statements from the police accident report as hearsay. The trial court granted the

9

motion, ruling that nothing from the report could be elicited during trial without a proffer and ruling in advance. Nevertheless, in reply to a query from defense counsel as to whether plaintiff called for an ambulance at the scene of the accident, Mr. Davis replied, "No. Both the police officer and I asked." The remark was promptly objected to by plaintiff's counsel, and the objection was sustained and cured by an appropriate instruction to the jury by the trial court. While it does not appear that Mr. Davis's improper statement was purposefully elicited, this incident, particularly in light of the rest of defense counsel's improprieties, evinces a failure to adequately prepare the witness for trial.

*Testimony Concerning How Physician Was Paid*

At another pretrial hearing, the trial court ruled that defense counsel could not question one of plaintiff's treating physicians, Dr. James Svabek, regarding how his bill had been paid. Notwithstanding this order, when, during cross-examination, Dr. Svabek volunteered that he had been remunerated, defense counsel followed up with the query, "How were you paid for the services?" Plaintiff's counsel's prompt objection was sustained by the trial court, which rejected defense counsel's characterization of the pretrial order as having been predicated on the mutual ignorance of both the trial court and counsels as to whether Dr. Svabek had yet been paid.

*Insinuation that Appellant Had Previously Received a Speeding Ticket*

10

During defense counsel's cross-examination of plaintiff, the following exchange took place:

> DEFENSE COUNSEL: And is it something that you do every day in setting the cruise control to monitor your speeds going home from work?
>
> PLAINTIFF: Yes, sir, because [police] have radars out there.
>
> DEFENSE COUNSEL: So you set the cruise control on 35 and then 45 every day while coming home from work?
>
> PLAINTIFF: I always did. . . .
>
> DEFENSE COUNSEL: Did you ever get– Strike that.

Outside the hearing of the jury, plaintiff's counsel again moved for a mistrial, arguing that defense counsel's question suggested to the jury that plaintiff had received a speeding ticket in the past, information that defense counsel knew would be improper and inadmissible. Defense counsel conceded he knew the question would draw an objection and "that's why I didn't complete it." He argued there was no prejudice because he never completed the question, and the trial court denied the motion for mistrial.

## Cumulative Effect of Errors and Improprieties

"Although the trial court's ruling is entitled to substantial deference, there is a point where the 'totality of all errors and improprieties' are 'pervasive enough to raise doubts as to the overall fairness of the trial court proceedings.'" Bocher v.

Glass, 874 So. 2d 701, 704 (Fla. 1st DCA 2004) (quoting Manhardt v. Tamton, 832 So. 2d 129, 133 (Fla. 2d DCA 2002)). That point was manifestly reached in the instant case. None of the errors or improprieties, besides those of defense counsel at closing argument, individually constituted sufficient grounds for mistrial; some were harmless as a matter of law because they implicated the issue of damages, all were promptly and properly objected to by plaintiff's counsel, and most were remedied by curative instructions by the trial court where appropriate. However, as this Court has previously noted:

> Jurors cannot be expected to understand the basis of counsel's repeated objections. All that is apparent to jurors placed in this position is that frequent objections and sidebar conferences prolong their service, and perhaps limit the information available to the jury. Thus, counsel's repeated objections to the same type of behavior may well lead the jury to infer that one side of the case is trying to hide or disguise matters that would be useful to the jury.

Bocher, 874 So. 2d at 704.

We believe it probable that the cumulative effect of the repeated improprieties, objections, and instructions below was to unduly prejudice jurors by casting improper aspersions on the plaintiff's credibility and the integrity of her counsel.

We hasten to add that plaintiff's counsel did not exit these proceedings with clean hands either. We decline to enter into a discussion of "who started it," but we note that plaintiff's counsel's snide denigration of Dr. Ipser's professional occupation in the presence of the jury and postings by plaintiff's counsel on his own

12

public Facebook page – which included commentary on the proceedings and the evidence and derogatory references to one of defendant's attorneys – were well outside the bounds of professional conduct to which members of our profession are expected to adhere.

Trusting that both parties' counsels will henceforth conduct themselves with the decorum befitting their profession, we AFFIRM in part, REVERSE in part, and REMAND for new trial.

RAY, J., CONCURS; LEWIS, J., DISSENTS with opinion.

LEWIS, J., dissenting.

I respectfully dissent and would affirm the final judgment. While I agree with the majority that defense counsel's statement concerning the plaintiff's deposition was improper, I disagree that the trial court abused its discretion in denying the plaintiff's motion for mistrial because, unlike the majority, I do not view the statement as being so prejudicial as to vitiate the entire trial. Although the comment could be viewed as an attack on the plaintiff's credibility, it is worth noting that defense counsel did not say that the plaintiff failed to mention during her deposition that she tapped her brakes, that she was asked during her deposition whether she tapped her brakes and she denied doing so, or that she changed her story as to what occurred before the accident. Instead, the statement was: "We took her deposition for hours and it never came up." That statement could have been interpreted by the jury to mean that the plaintiff was not asked by defense counsel during her deposition whether she tapped her brakes. Either way, the trial court instructed the jury to disregard the comment by stating:

> I'm going to instruct the jury to disregard the last statement by counsel, something to the effect that there was nothing in the plaintiff's deposition that had to do with her tapping the brakes to disengage the cruise control. Again, I will remind you again, rely on your memories of what you heard here as evidence on every topic, okay? Thank you.

In my opinion, this curative instruction was sufficient to ensure that the plaintiff suffered no prejudice. See Sutton v. State, 718 So. 2d 215, 216 (Fla. 1st DCA 1998)

14

(noting the well-established presumption that juries follow trial court instructions); see also Perez v. State, 919 So. 2d 347, 364 (Fla. 2005) (holding that a mistrial was not warranted when a detective testified that the appellant told him that he always carried around a knife given that it was a short one-sentence statement and the trial court immediately gave a curative instruction); Hulick v. Beers, 7 So. 3d 1153, 1157 (Fla. 4th DCA 2009) ("If the trial court could have reasonably decided that a curative instruction could have clarified any possible misunderstanding, then denial of the mistrial motion is warranted."); Dozier v. Hodges, 849 So. 2d 1094, 1095 (Fla. 3d DCA 2003) (holding that the trial court properly denied the motion for new trial, which was based on comments made during closing argument, where the trial court sustained all appropriate objections, gave curative instructions, and the evidence supported the jury's verdict); Allstate Ins. Co. v. Wood, 535 So. 2d 699, 699 (Fla. 1st DCA 1988) (stating that the trial court "has a superior vantage point to determine the effect" of any error on the jury and its ruling as to a new trial will not be disturbed "unless it appears clear and patent on the record that prejudicial error occurred").

As for whether the cumulative effect of the various statements made by defense counsel warrants a new trial, it is important to note that the trial was contentious on both sides, with the plaintiff's attorney admitting that he was not "terribly proud" of his behavior during trial. At one point, the trial court advised both sides that it had "given [them] a little bit of leeway" but would tolerate nothing

15

less than professionalism and civility going forward. I disagree with the majority that the point was reached in this case where the totality of all errors and improprieties was pervasive enough to raise doubts as to the overall fairness of the trial court proceedings.

In City of Miami v. Kinser, 187 So. 3d 921, 922 (Fla. 3d DCA 2016), the Third District held in part that the cumulative effect of the objected-to improper statements did not deprive the appellant of a fair trial. There, the appellee's counsel improperly bolstered the credibility of the appellee's testimony by stating in part that the appellee did not make anything up and was honest, counsel improperly denigrated the appellant for asserting a defense and stated that an argument made by the appellant was ridiculous, and counsel improperly appealed to the conscience of the community by stating that the appellee did not get to come back before the jury and that the jury needed to take its instrument and get it right. Id. at 923-25. In affirming, the Third District set forth:

> While it is clearly improper for an attorney to bolster the credibility of a witness, attack a party for putting on a valid defense, or appeal to the conscience of the community, most of the improper arguments were timely objected to; curative instructions were given . . .; and the prejudice to the City caused by these improper arguments was mitigated by the curative instructions.

Id. at 925.

While the issues and comments at issue in Kinser were different from those involved in this case, they were arguably more egregious than those present here.

16

Nevertheless, the Third District still determined that affirmance was in order. Here, like in <u>Kinser</u>, the cumulative effect of the improper comments did not deprive the plaintiff of a fair trial because most of the improper comments were timely objected to, curative instructions were given by the trial court, and the prejudice to the plaintiff caused by the improper comments was mitigated by the curative instructions.

As for the trial court's mistaken statement to the plaintiff's counsel that an attorney may not question jurors on substantive law, which occurred after counsel asked the venire whether anyone would have a problem awarding the plaintiff damages for an "entire condition" if they were unable to decide what portion of the condition "resulted from the aggravation" caused by Dillard's alleged negligence of "an existing disease or physical defect," any error was harmless because the jury returned a defense verdict, finding that Dillard's did not negligently cause the accident. In <u>Brown v. State</u>, 614 So. 2d 12, 12 (Fla. 1st DCA 1993), this Court held that the trial court improperly restricted the defense's questioning of prospective jurors about the appellant's anticipated voluntary intoxication defense to the charges of battery on a law enforcement officer and resisting arrest with violence and, therefore, reversed those convictions and remanded for a new trial on those charges. However, this Court affirmed the appellant's misdemeanor conviction and sentence for possession of drug paraphernalia because the voluntary intoxication defense did

not apply to that charge.  Id.  Here, because the jury returned a defense verdict, it had no need to calculate damages.  Therefore, the trial court's improper restriction of *voir dire* was harmless, a fact Appellant essentially concedes by acknowledging that this issue is not a basis for reversal.  I also find no merit in Appellant's argument that defense counsel attempted to prejudice the jury against the plaintiff as Appellant cites to no evidence that defense counsel's objection was made in bad faith.

For the foregoing reasons, I would affirm.