715 So.2d 996 (1998)
Nancy Jean DAVIS, individually and as Trustee for Nancy Jean Davis, et al., Appellants,
v.
SOUTH FLORIDA WATER MANAGEMENT DISTRICT, et al., Appellees.
Nos. 96-3941, 97-0127.
District Court of Appeal of Florida, Fourth District.
July 8, 1998.
Rehearing and Rehearing Denied September 3, 1998.
*997 Andy Schuster, Toby Prince Brigham, and Amy Brigham Boulris of Brigham, Moore, Gaylord, Schuster, Merlin & Tobin, Miami, for appellants.
Ruth P. Clements of South Florida Water Management District, West Palm Beach, for Appellee-South Florida Water Management District.
Rehearing and Rehearing En Banc Denied September 3, 1998.
STONE, Chief Judge.
We affirm the final judgment in this condemnation proceeding involving a large tract of land taken for Everglades Restoration purposes.
At trial, Appellants' expert testified that the fair market value of the land was $18 million dollars, while the expert of the South Florida Water Management District ("District") testified that it was worth only $10 million. On the date of the taking, the land was zoned for agricultural residential use, which allows a maximum of 146 homesites on the property. District's expert testified that maintaining the current zoning designation of one unit per ten acres was the highest and best use of the property at the time of the taking. His calculation of fair market value is based on this use by comparing the sales of six similar parcels in similar locations.
Appellants' expert also used a comparable sales approach to determine fair market value. He based his calculations on his opinion that a residential development on the property with a density of 1.65 units per acre, or 2,339 units, was the highest and best use of the land. To determine whether this proposed use would be financially feasible, Appellants' expert looked to the comparable sales data. To double check his conclusion as to feasibility, he employed a "discounted cash flow" model. That model calculates the rate of return on investment that is potentially yielded by Appellants' proposed use of the subject property. The calculation is used to determine whether a project will produce an adequate rate of return compared to the amount of an investor's capital investment.
*998 Appellants initially assert that evidence based on a discounted cash flow model was erroneously admitted as evidence of fair market value, as evidence of comparable sales exists. They contend that the court should have prohibited District from questioning Appellants' expert during cross-examination about his use of the discounted cash flow model. However, prior to their expert's taking the stand, Appellants requested a ruling in limine from the court based on this argument. The trial court advised that the subject would be proper cross-examination. Without knowing whether that evidence would be offered by District, Appellants then elected to preemptively question their expert on the matter during direct examination. Appellants adopted a strategy opening the door to District's cross-examination. Therefore, we need not resolve what role the discounted cash flow model might otherwise play in considering highest and best use and fair market value had Appellants not raised the matter.[1]
We also reject Appellants' challenge to the testimony of a District witness who was not a licensed appraiser. The trial court has broad discretion in determining whether a witness is qualified to offer opinion testimony. See Harrison Land Dev., Inc. v. R & H Holding Co., 518 So.2d 353, 355 (Fla. 4th DCA 1987). Here, the witness had an extensive background in both economics and real estate. Cf. Porter v. Columbia County, 75 So.2d 699, 700 (Fla.1954) (witness was incompetent because he was neither an appraiser, a real estate expert, nor a person with any necessary qualifications to express an opinion as to the value of property).
Appellants further seek a new trial for improper and prejudicial remarks by District's counsel during closing argument, in which, Appellants assert, the attorney injected his own credibility into the argument, offered his personal opinion to the jury, and suggested that the jurors would ultimately pay for the verdict as taxpayers. District's attorney stated:
Ladies and gentlemen of the jury, it's easy to make an appeal that the property owner ought to receive a full bucket. And as a lawyer and an officer of the court, and an attorney who is proud to represent South Florida Water Management District and other condemning authorities and private property owners, I will tell you that $18 million overflows that bucket by $8 million because they're asking you to pay, they're asking you to consider the value of this property with elements of risk, and elements that aren't there and may never be there.
Appellants' counsel objected to the comment and moved for a mistrial on the basis that it improperly suggested that the jurors would pay an inflated amount in their role as taxpayers. The court reserved ruling on the mistrial and allowed District to correct that impression. District continued:
Ladies and gentlemen of the jury, it's very clear that none of you have to pay anything, and when I said you, I meant you in the role of a willing buyer would have to pay. I understand that none of you are the buyers. This hypothetical buyer would have to pay that amount of money, and that would overflow, that would reduce the compensation, using Mr. Brigham's analogy, more than overflow the barrel, the bucket, by almost $8 million or $9 million.
The "full bucket" analogy to which District's attorney referred was first made by Appellants' counsel during his earlier closing argument, in which he stated:
Full compensation is your goal, as the constitution requires. It's kind of like a bucket of water. A bucket of water you fill to the brim, and you know if it spills over and you know when it's less. And what we want here is for the bucket to be full. And by full I simply mean, please find from the evidence, not from the hypothetical argumentation, but from actual sales in the marketplace, what this property would bring to these owners if it weren't taken as of February 7, 1996.
*999 Patently, it would be improper for counsel to suggest that a jury consider that whatever the jury awards will come out of their [as taxpayers'] pockets. See Conner v. State Rd. Dep't of Fla., 66 So.2d 257 (Fla. 1953); Doty v. City of Jacksonville, 106 Fla. 1, 142 So. 599 (1932). Although the "asking you to pay" comment could be construed as reminding the jurors that they are taxpayers, here it does not rise to the level of reversible error. The statement was a response to Davis' characterization that the jurors had to fill the "bucket" of full compensation. Although District would have been wiser to use the phrase "they're asking you [the jurors] to award" instead of "to pay," the comment in the context made should not be deemed prejudicial in light of counsel's clarification. See Johnson v. State, 696 So.2d 326, 334 (Fla. 1997), cert. denied, ___ U.S. ___, 118 S.Ct. 892, 139 L.Ed.2d 878 (1998); see also Bauta v. State, 698 So.2d 860, 864 (Fla. 3d DCA 1997).
Although we affirm, we recognize that counsel's statement, that as an "officer of the court" and an attorney who represented District and other authorities he would tell the jury that $18 million was too much for full compensation, is improper as an expression of his opinion of the evidence and an attempt to bolster his own credibility. Counsel should have known that an attorney is prohibited, by section 4-3.4 of the Rules Regulating the Florida Bar, from stating a personal opinion at trial as to the justness of a cause or credibility of a witness. Courts have recognized that this rule has two purposes:
[I]t prevents lawyers from putting their own credibility at issue in a case. The jury is required to decide a case on the basis of the law and evidence, not on their affinity for or faith in a particular lawyer. While every advocate strives to be trusted and believed, it subverts the jury system to make an overt, personal pitch.
Moreover, a statement of personal belief inevitably suggests that the lawyer has access to off-the-record information, and therefore invites the jury to decide the case on the basis of non-record evidence. Forman v. Wallshein, 671 So.2d 872, 874 (Fla. 3d DCA 1996) (quoting Steven Lubet, Modern Trial Advocacy and Practice 432-33 (1993)); see also Goutis v. Express Transp., Inc., 699 So.2d 757, 761-62 (Fla. 4th DCA 1997), rev. dismissed, 705 So.2d 901 (Fla. 1998); Seguin v. Hauser Motor Co., 350 So.2d 1089, 1090 (Fla. 4th DCA 1977). Further, the attorney's highlighting of his status as an officer of the court and an attorney for a state agency renders his comments particularly offensive. We nevertheless must affirm, as no timely objection was made and these remarks do not constitute fundamental error. See Murphy v. International Robotics Sys., Inc., 710 So.2d 587, 23 Fla. L. Weekly D447 (Fla. 4th DCA Feb.11, 1998); Weise v. Repa Film Int'l, Inc., 683 So.2d 1128 (Fla. 4th DCA 1996).
As to all other issues raised, we also affirm.
GUNTHER and POLEN, JJ., concur.
NOTES
[1] For background on various appraisal methods and widely accepted methods of valuation, see Florida Eminent Domain Practice and Procedure § 9.38 (5th ed.1996); J.D. Eaton, Real Estate Valuation and Litigation (2d ed.1995); Boynton v. Canal Auth., 265 So.2d 722 (Fla. 1st DCA 1972); and McNayr v. Claughton, 198 So.2d 366 (Fla. 3d DCA 1967).