778 So.2d 381 (2001)
Nila WILBUR, M.D.; Gardens Radiology Associates, P.A.; Richard Sarner, M.D.; Derek P. Brock, M.D.; Derek P. Brock, M.D., P.A.; Jaime Zighelboim, M.D.; Mitchell S. Flaxman, M.D.; and Koerner, Taub & Flaxman, M.D., P.A., Appellants,
v.
Calvin HIGHTOWER, Personal Representative of the Estate of Barbara Hightower, Appellee.
Nos. 4D00-1175, 4D00-1176, 4D00-1194, and 4D00-1195.
District Court of Appeal of Florida, Fourth District.
January 17, 2001.
Rehearing Denied March 16, 2001.
*382 Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, and Roy R. Watson of Adams, Coogler, Watson, Merkel, Barry & Kellner, West Palm Beach, for appellants Wilbur and Gardens Radiology.
William T. Viergever and Michael S. Smith of Sonneborn, Rutter, Cooney, Klingensmith & Eyler, P.A., West Palm Beach, for appellant Sarner.
Scott Michaud of Michaud Buschmann Fox Ferrara & Mittelmark, for appellant Brock.
Dinah S. Stein and Mark Hicks of Hicks, Anderson & Kneale, P.A., Miami, for appellants Zighelboim, Flaxman and Koerner, Taub & Flaxman.
Jane Kreusler-Walsh and Rebecca J. Mercier of Jane Kreusler-Walsh, P.A., West Palm Beach, and Theodore Babbitt and Joseph R. Johnson of Babbitt, Johnson & Osborne, P.A., West Palm Beach, for appellee.
FARMER, J.
In this medical malpractice action, a jury found five doctors negligent and awarded damages of more than $2.4 million. The trial court ordered a new trial on damages based on two widely separated comments made by plaintiff's counsel during closing argument. The trial judge's only stated reason was that the comments were "so egregious that they constitute fundamental error." Defendants argue on appeal that the comments warrant a new trial on liability as well. We disagree and reverse the order granting a new trial.[2]
The first comment of plaintiff's counsel was as follows:
"your verdict in this case is supposed to pay for the loss that this man has suffered and will suffer for the rest of his life. That verdict should be in the amount of five million dollars, one million dollars for each of the defendants in this case. In this day and age where inanimate objects like paintings are sold at auctions for ten million dollars, a living, breathing person has died, Barbara Hightower"
At this point defendants objected, but the trial court overruled the objection and plaintiff continued thus:
"Before I was interrupted, I was talking about the loss thatwhat that means to Mr. Hightower that this living person is gone from his life. What is the value of that loss? You could say no amount of money could bring her back and that's true, but you have got to make sense out of this. You have got to make some sense out of this loss."
*383 The defendants argue that this comment was an improper "value of human life" argument, akin to that found improper in Public Health Trust of Dade County v. Geter, 613 So.2d 126 (Fla. 3d DCA 1993).
In Geter, counsel for the plaintiff asked the jury to place a monetary value on the life of the decedent, just as a monetary value is placed on an eighteen million dollar Boeing 747 or an eight million dollar SCUD missile. The Third District ordered a new trial on damages, finding that such argument was improper, highly inflammatory, and deprived the defendant of a fair trial on the issue of damages. 613 So.2d at 126. That court had earlier explained that "the value of a human life is not an element of damages and is not a proper subject for final argument." Russell v. Trento, 445 So.2d 390 (Fla. 3d DCA 1984).
Defendants contend that, as in Geter, the message to be gleaned from the plaintiff's argument in this case was "[i]f a picture is worth ten million dollars, what is a human life worth?" Reviewing the argument in its entirety and placing the challenged portion of the plaintiff's argument into context, however, it is clear that the plaintiff's counsel was not arguing that the jury should place a monetary value on the decedent's life but, rather, on her surviving spouse's loss. We thus conclude that the trial judge was correct in overruling the objection when the argument was actually made to the jury.
A judge may not base an order for a new trial on argument that is both generally and contextually proper as a matter of law. Cf. Murphy v. International Robotic Systems, Inc., 766 So.2d 1010 (Fla.2000) (civil litigant may obtain relief based on improper closing argument made by counsel for an opposing party). Section 768.21(2), which governs recoverable damages in wrongful death negligence actions, provides that "[t]he surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of the injury."[3] Thus, while the value of a human life is not an element of damages and is not a proper subject for final argument, the value of a surviving spouse's loss of his wife's companionship and protection, as well as his mental pain and suffering as a result of her wrongful death, is a proper measure of damages within the Wrongful Death Statute.
The second challenged comment came during rebuttal argument, as counsel argued:
"You need to come back with a verdict you can be proud of [a] verdict that my client, Mr. Hightower, can come up here and shake your hands and say you have made some sense out of this. Don't let these people go back to their offices and [laugh] in the hall room and say, we put one over on them. Baloney. They missed the diagnosis, they missed the x-rays, not once but twice, and this lady's life depended on it. They made a mistake. The didn't mean to do it, but they made a mistake, and they're responsible."
Defendants argue that this latter argument was even more egregious than the first and affected liability as well as damages in that it was "an exhortation to the jury to send a message to the defendants", "it essentially accused the defendants of perpetrating a fraud upon the jury and the court", and that "it was nothing more than a conscience of the community argument". Not one of the many attorneys for defendants interposed a contemporaneous objection to this argument.
As an initial matter, we do not agree that the argument was an exhortation to "send a message" or that it was a "conscience of the community" argument. We do agree, however, that it could reasonably be understood as accusing defense counsel of attempting to mislead the jury, at least as regards the subject of damages. In *384 context, however, it does not appear to have been prejudicial as defendants later argued in the hearing on post trial motions, or indeed before this court. For one thing, in addition to compelling evidence of medical negligence,[4] the record also establishes how devastating the loss of the decedent was to the surviving spouse. This was a 41-year marriage, and there was substantial evidence of grief and emotional loss. For another, the jury more than halved plaintiff's requested damages. Moreover, and not the least salient, the remark was a single excess at the end of a five week long trial. An examination of the record shows that the argument was utterly harmless.
In Murphy, the court established definite principles and standards for the consideration of new trials based on unobjected arguments of counsel in civil cases. 766 So.2d at 1027-1030. The court held that unchallenged improprieties in closing argument may be used as a basis for new trials only when the following requirements are satisfied: (1) the challenged argument must be improper; (2) the argument must be shown to be harmful; (3) the harm must be shown to be incurable; (4) the harm must so damage the fairness of the trial that the public's interest in our system of justice requires a new trial. Id. In explaining the harmfulness (2) requirement, the court said:
"In imposing this harmfulness requirement, we recognize that `there is a temptation for both trial courts and appellate courts to use the remedy of new trial as a tool to punish misconduct of an attorney.' However, closing argument that is violative of rule 4-3.4 does not necessarily constitute harmful error. Although courts have a supervisory role in overseeing the conduct of attorneys, the primary concern of courts must be how the improper closing argument affected the fairness of the trial proceedings. Thus, we agree ... that, in many cases, `when argument descends to the level of ethical violations, there are other ways to address the transgression than reversal of a jury verdict.' We in no way condone improper comments but conclude the litigation process is intended to resolve the pending dispute, not provide a mechanism to deal with wayward lawyers."
"Harmfulness in this context also carries a requirement that the comments be so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury. Passing remarks of little consequence in the scope of a lengthy trial should find little sympathy if no contemporaneous objection is voiced. The extensiveness of the objectionable material is a factor to be considered in the harmfulness analysis. In sum, the improper closing argument comments must be of such a nature that it reaches into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments." [e.s., c.o.]
766 So.2d at 1029-1030. We note that defendants suggested no tangible indication in the record demonstrating that the argument was harmful. Indeed, the award of damages strongly indicates that the argument was utterly ineffective.
At the same time, Murphy holds that the complaining party must establish that the harm caused by the arguments is incurable. As the court said:
"Should a complaining party establish that the unobjected-to closing argument being challenged is both improper and harmful, the party must then establish that the argument is incurable. Specifically, a complaining party must establish that even if the trial court had sustained a timely objection to the improper argument and instructed the jury to disregard the improper argument, such curative measures could not *385 have eliminated the probability that the unobjected-to argument resulted in an improper verdict. This concept of `incurability' can be traced back to the ... standard that a timely objection to improper closing argument is required before a new trial may be granted based on such argument unless `the improper remarks are of such character that neither rebuke nor retraction may entirely destroy their sinister influence.' [I]t will be extremely difficult for a complaining party to establish that the unobjected-to argument is incurable." [e.s., c.o.]
766 So.2d at 1030. No objection was voiced when the improper comment was actually made, so any chance that a rebuke would destroy any of its supposed effects was effectively foresworn. It was only on the next day of trial that defense counsel finally brought the matter to the attention of the trial judge, who did not then grant a mistrial. In any event, there was absolutely nothing offered by defendants to show that any harm caused by the comment was incurable.
The trial judge's order makes none of the findings required by Murphy.[5] It does not find that the remark was harmful or that it was incurable. There is nothing demonstrating that "it reaches into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments." Indeed the only basis for the new trial is that the combined arguments were "so egregious that they constitute fundamental error." The fact that an improper argument is excessively wrong does not make it "fundamental" or a proper basis for a new trial; an improper remark must satisfy the requirements of Murphy to support a new trial order. The unobjected argument in this case simply cannot be deemed "so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury."[6] To repeat, it was a single comment in argument near the end of a five week trial thatwhile capable of being interpreted to be an improper attribution of motives without any basis thereforwas of highly doubtful effect.
We therefore conclude that the trial judge abused his discretion in ordering a new trial. Discretion is abused when the court chooses a remedy that the facts and law do not support. See Ellard v. Godwin, 77 So.2d 617 (Fla.1955) (judicial discretion means a discretion exercised within limits of applicable principles of law and equity and its exercise must be tested against such principles for abuse); Ray Richardson Inc. v. Carlton, 140 Fla. 229, 191 So. 433 (1939) (discretion abused if contrary to law). Given the legal principles discussed in Murphy for an award of a new trial, we conclude that no reasonable trial judge would grant a new trial based on the record in this case. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980) (discretion is abused when no reasonable man would take view adopted by trial court; if reasonable persons could differ as to propriety of action taken by trial court, then it cannot be said that trial court abused its discretion); see also Murphy, 766 So.2d at 1030-1031.
We, therefore, reverse the trial court's order granting a new trial and remand for the entry of judgment on the verdict.
TAYLOR, J., and KAHN, LISA DAVIDSON, Associate Judge, concur.
NOTES
[2] We affirm on all other issues. In particular we find no error in regard to the matter of jury selection. While the trial judge may have evidenced some misunderstanding as to the current state of the law in objecting to peremptory challenges under State v. Neil, 457 So.2d 481 (Fla.1984), the record demonstrates that in all events he was satisfied that plaintiff's non-invidious reasons for the subject challenges were genuine. In the end that is the crucial part of an objection under Melbourne v. State, 679 So.2d 759 (Fla.1996).
[3] See § 768.21(2), Fla. Stat. (1999).
[4] The victim went to the hospital as an outpatient for an enema and ended up dying from a perforated bowel.
[5] In fairness we note that the trial judge did not have the benefit of the supreme court's decision in Murphy, even if it did have the decision of this court in that case. Murphy v. Int'l Robotics Systems Inc., 710 So.2d 587 (Fla. 4th DCA 1998).
[6] Having so held, we nonetheless condemn the lack of professionalism in plaintiff's counsel in making such an aspersion. It is precisely this kind of overkill that is most cited in public discussions of the objectionable conduct of lawyers that brings disrepute to the profession.