LAMBERT, B.D., Associate Judge.
 

 The City of Orlando (“the City”) appeals the final judgment rendered in this wrongful death action brought by Carmen Pinei-ro (“Pineiro”) as personal representative of the estate of her son, Edwin Alvarado.
 
 [1]
 
 The jury found the City 55% responsible for the death of Alvarado and the Fabre
 
 [2]
 
 defendant, Kenyon Crowe (“Crowe”), 45% at fault, and final judgment was rendered accordingly. The City argues that a new trial should be ordered because of (1) numerous improper closing arguments of Pi-neiro’s counsel, and (2) erroneous eviden-tiary rulings made by the trial court; it concludes that a new trial is warranted in any event because the verdict is contrary to the evidence and the law. For the reasons explained seriatim, we reverse and remand for a new trial.
 

 On the evening of January 20, 2006, Edwin Alvarado, 21 years of age, had just left a barbershop when a pickup truck driven by Crowe struck his vehicle, killing him. Pineiro was appointed personal representative of her son’s estate and initially brought suit against both Crowe and the owner of the vehicle. The complaint was later amended to add the City. Pineiro asserted that officers from the Orlando Police Department, immediately prior to the accident, negligently engaged in a high speed pursuit of Crowe in violation of the City’s pursuit policy and that the pursuit proximately caused or contributed to the accident and Alvarado’s death. Pineiro eventually resolved her claims against the other defendants and the case went to trial against the City. Because the impropriety of comments made during closing argument is dispositive of this appeal, we address those comments first. We then turn to other evidentiary rulings to provide guidance to the parties upon retrial and, finally, we address the City’s argument
 
 *1068
 
 that the verdict was against the manifest weight of the evidence.
 

 I. CLOSING ARGUMENT
 

 The City argues that the trial court committed reversible error in not sustaining four objections made during Pineiro’s closing argument and in not granting its post-trial motion for new trial based on these errors and other improper closing arguments made by Pineiro but not objected to by the City. We review a trial court’s order granting or denying a motion for a new trial based on objected — to or unobjected — to improper argument for abuse of discretion.
 
 Murphy v. Int’l Robotic Sys. Inc.,
 
 766 So.2d 1010, 1030-31 (Fla.2000);
 
 Bocher v. Glass,
 
 874 So.2d 701, 704 (Fla. 1st DCA 2004). “If the issue of an opponents improper argument has been properly preserved by objection and motion for mistrial, the trial court should grant a new trial if the argument was ‘so highly prejudicial and inflammatory that it denied the opposing party its right to a fair trial.’ ”
 
 Engle v. Liggett Group, Inc.,
 
 945 So.2d 1246, 1271 (Fla.2006) (quoting
 
 Tanner v. Beck,
 
 907 So.2d 1190, 1196 (Fla. 3d DCA 2005)). However, for an unobjected — to improper argument to support a new trial order, the unobjected — to improper argument must be “of such a nature as to reach into the validity of the trial itself to the extent that the verdict could not have been obtained but for such comments.”
 
 Id.; see also Murphy,
 
 766 So.2d at 1029-30. We separately address the objected-to and unobjected-to alleged improper closing arguments.
 

 A. OBJECTED-TO CLOSING ARGUMENT.
 

 1. Inflammatory Comment.
 

 At the conclusion of Pineiro’s rebuttal closing argument, counsel stated:
 

 The City of Orlando has to be held accountable for the death of Edwin Alvarado and you must compensate them for an amount equal to their harm. The harm that they suffered. If you fail to do so, they escape responsibility. But more importantly, if you fail to do so in this case, if you see OPD [Orlando Police Department] outside the courtroom or in the elevator or in the parking garage, guess what they are going to be doing, folks?
 

 The City objected and a sidebar was held. The City first argued that what the Orlando Police Department would do outside the courtroom was neither relevant nor rebuttal to any comment by the City. The trial court understandably inquired as to the direction of the argument. Pineiro’s counsel advised that he would be arguing to the jury that if it failed to award damages in favor of Pineiro against the City, the Orlando Police Department would be laughing.
 
 [3]
 
 The City reiterated its objection that this comment was not rebutting the City’s closing, was very prejudicial and argumentative, and was not a comment on the evidence because there was no evidence as to what the Orlando Police Department would do after the case was over. The court overruled the City’s objection, and Pineiro concluded his rebuttal closing argument as follows:
 

 
 *1069
 
 And if you don’t hold the City of Orlando accountable or you don’t compensate the mother and father of Edwin Alvarado in an amount equal to their harm that the City of Orlando caused, when you see the City of Orlando folks outside the courtroom or in the elevator or out in the parking garage, guess what they are going to be doing? They are going to be doing exactly what they were doing at the scene of the accident and at the Citrus Bowl, laughing.
 

 On appeal, the City argues that these comments were highly inflammatory, without basis in evidence, not in response to the City’s closing, and were intended to do nothing but prejudice the jury. We agree. There was no legitimate basis for this inflammatory argument; it was clearly a calculated effort by Pineiro’s counsel, in his last comment to the jury in this hotly disputed trial, to elicit an emotional response from the jury, that, in order to avoid being laughed at, post-verdict, it must find the City liable.
 
 [4]
 

 This court has long cautioned attorneys against resorting to inflammatory, prejudicial argument.
 
 Walt Disney World Co. v. Blalock,
 
 640 So.2d 1156 (Fla. 5th DCA 1994);
 
 Silva v. Nightingale,
 
 619 So.2d 4 (Fla. 5th DCA 1993). In
 
 Murphy,
 
 the Florida Supreme Court provided guidance and direction regarding closing argument:
 

 The purpose of closing argument is to help the jury understand the issues in a case by “applying the evidence to the law applicable to the case.”
 
 Hill v. State,
 
 515 So.2d 176, 178 (Fla.1987). Attorneys should be afforded great latitude in presenting closing argument, but they must “confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts in evidence.”
 
 Knoizen v. Bruegger,
 
 713 So.2d 1071, 1072 (Fla. 5th DCA 1998);
 
 see also Venning v. Roe,
 
 616 So.2d 604 (Fla. 2d DCA 1993). Moreover, closing argument must not be used to “inflame the minds and passions of the jurors so that their verdict reflects an emotional response ... rather than the logical analysis of the evidence in light of the applicable law.”
 
 Bertolotti v. State,
 
 476 So.2d 130, 134 (Fla.1985).
 

 Attorneys presenting closing argument in Florida courts, whether in criminal or civil trials, are governed by Rule 4-3.4 of the Rules Regulating The Florida Bar. Rule 4-3.4 states:
 

 A lawyer shall not ... in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.
 

 R. Regulating Fla. Bar
 
 4-3.4(e). The underpinnings of this ethical rule are well-founded; it not only prevents lawyers from placing their own credibility at issue in a case, it also limits the possibility that the jury may decide a case based on non-record evidence.
 
 See Davis v. South Florida Water Management District,
 
 715 So.2d 996, 999 (Fla. 4th DCA 1998);
 
 Forman v. Wallshein,
 
 671 So.2d 872, 875 (Fla. 3d DCA 1996). In sum, Rule 4-3.4 is in place to help insure that juries render verdicts based on record evidence and applicable law, not based on impermissible matters interjected by counsel during closing argument.
 

 Murphy,
 
 766 So.2d at 1028.
 

 This argument was clearly improper.
 

 
 *1070
 
 2. Value of Life/Send-a-Message Argument.
 

 In an attempt to assist the jury-in evaluating damages to award Alvarado’s parents for Alvarado’s death, Pineiro’s counsel stated:
 

 The question you may be asking is, how do I possibly put a value on the life of a loved one?
 

 The City correctly objected on the ground that this is not the correct standard of damages.
 
 Fasani v. Kowalski,
 
 43 So.3d 805 (Fla. 3d DCA 2010);
 
 Wilbur v. Hightower,
 
 778 So.2d, 381, 383 (Fla. 4th DCA 2001). It is clearly error to ask a jury to place a monetary value on the life of a decedent because “ ‘the value of a human life is not an element of damages and is not the proper topic for closing argument.’ ”
 
 Wilbur,
 
 778 So.2d at 383 (quoting
 
 Russell v. Trento, 445
 
 So.2d 390, 392 (Fla. 3d DCA 1984)). The trial court did not specifically rule on the objection, but directed Pineiro’s counsel to “stick to pain and suffering.”
 

 Seemingly undeterred, Pineiro’s counsel continued:
 

 How do you possibly put a figure on the value of the pain and suffering for Edwin’s mother and father? Unfortunately, there is no exact measurement or formula. One thing we know is that virtually every day we place some form of a value on life. Think about the times an individual is lost at sea or by boat or plane. We don’t hesitate to send helicopters, the Coast Guard, hundreds of men and women and divers to search for person. When considering spending money to save a stranded person, we don’t stop first and ask the person’s age, race or social status. We all recognize the value of human life.
 

 You may be asking yourself, what good is the money going to do? We all know that money cannot bring back Edwin, but that’s not the issue here.... Also, the money does help to tell Edwin’s mother and father that you, the jury, recognize that what has been done is wrong and should not have ever happened.
 

 At this point, the City again objected and moved for a mistrial, arguing that the statement that an award of money will tell the parents that what was done is wrong and should never have happened is an improper send-a-message argument. The motion for mistrial was denied.
 

 We agree with the City that the comment was improper send-a-message argument,
 
 Kloster Cruise Ltd. v. Grubbs,
 
 762 So.2d 552 (Fla. 3d DCA 2000), because the jury was being asked to award money not based on the proof supporting the proper recoverable damages allowed in a wrongful death action, but to remedy wrongful, intentional, as opposed to negligent, conduct. Had this been the only improper comment, we may not have concluded that reversal was required. However, as we are obliged to reverse based on the inflammatory comment addressed above, this comment adds support for our decision. The cumulative effect of the improper comments leads us to conclude that the City was deprived' of a fair trial and that a new trial to cure the prejudice is required.
 
 See Werneck v. Worrall,
 
 918 So.2d 383, 388 (Fla. 5th DCA 2006);
 
 Bocher,
 
 874 So.2d at 704.
 

 3. Additional Send-A-Message Argument.
 

 Pineiro’s counsel later argued that Pineiro was not seeking a monetary award based upon sympathy, but was seeking damages equal to the harm the City caused. However, counsel then argued:
 

 Instead, the law says that you must speak to Edwin’s mother and father through your verdict. It is through this piece of paper that each and every one
 
 *1071
 
 of you tell Mom and Dad that Edwin’s life did have value....
 

 Many of us have suffered the loss of a loved one during our lifetime but have never received money for it. Why should Edwin’s mother and father recover money? The answer is simple. The law in Florida recognizes that the loss of a loved one is a traumatic and tragic experience. We want to do everything we can to stop these experiences from happening unnaturally. We want others to act responsibly and to do—
 

 At this point, the City objected and, at sidebar, argued that this comment was a send-a-message argument, which only applies in a punitive damages case.
 
 [5]
 
 The trial court advised counsel not to say “sentiments or words” to that effect.
 

 Although we find this an improper argument as it clearly suggests to the jury that a significant verdict will send a message to stop these experiences from happening
 
 [6]
 
 and will make others less likely to act irresponsibly,
 
 [7]
 
 on appeal, the City did not raise this specific argument. Rather, the City argued that this was an improper golden rule argument
 
 [8]
 
 and was also a factual misrepresentation that Pineiro would be uncompensated absent a favorable verdict because Pineiro had previously settled her claims against the other defendants. Because neither of the two arguments the City makes on appeal were made below, its arguments are not preserved for review.
 
 Aills v. Boemi,
 
 29 So.3d 1105 (Fla.2010);
 
 Herskovitz v. Hershkovich,
 
 910 So.2d 366, 367 (Fla. 5th DCA 2005) (“Absent jurisdictional or fundamental error, an appellate court should not consider issues that were not presented to the trial court.”). We caution against the use of any send-a-message arguments on retrial.
 

 4. References to Alvarado’s Parents.
 

 Lastly, the City argues that Pineiro’s counsel’s repeated references in closing to Alvarado’s parents as “mom” and “dad” violated an earlier admonition or order that the parents should be referred to as “mother” and “father.” Our review of the record indicates that Pineiro’s counsel regularly used the informal references over the City’s objection, but because no ruling was secured on the objection, the issue was not preserved for review.
 
 LeRetilley v. Harris,
 
 354 So.2d 1213 (Fla. 4th DCA),
 
 cert. denied,
 
 359 So.2d 1216 (Fla.1978).
 

 B. UNOBJECTED-TO ARGUMENT.
 

 The unobjected-to closing arguments by Pineiro’s counsel that the City believes justify a new trial are a comment regarding the age of the City’s counsel; a reference to the fee paid by the City to its expert witness; an improper “value of life” analogy; and the statement that the City would do whatever it takes to try to win. Pursuant to
 
 Murphy v. International Robotic Systems, Inc.,
 
 766 So.2d 1010, 1031
 
 *1072
 
 (Fla.2000), for unobjected-to comments in closing argument to justify reversal, they must be (1) improper; (2) harmful; (3) incurable; and (4) so damaging to the fairness of the trial that the public’s interest in the system of justice requires a new trial. The Florida Supreme Court defined harmful comments those that are “so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury” and defined an incurable argument as one that, “even if the trial court had sustained a timely objection to the improper argument and instructed the jury to disregard the improper argument, such curative measures could not have eliminated the probability that the unobjected-to argument resulted in an improper verdict.”
 
 Id.
 
 at 1030, 1031. As to the fourth prong, the court recognized that closing arguments appealing to racial, ethnic, or religious prejudice traditionally fit within the narrow category requiring a new trial even in the absence of an objection.
 
 Id.
 
 at 1030. Our analysis under
 
 Murphy
 
 does not proceed to this fourth prong unless the complaining party first establishes the improper, harmful, and incurable requirements.
 
 Mercury Ins. Co. of Fla. v. Moreta,
 
 957 So.2d 1242 (Fla. 2d DCA 2007). We also review the unobjected-to closing argument consistent with the admonition by the supreme court that it has come as close as possible to “closing the door” on appellate review of unpreserved challenges to closing argument consistent with notions of due process which deserve public trust in the judicial system.
 
 Murphy,
 
 766 So.2d at 1031.
 

 1. Counsel’s Age.
 

 The City’s counsel, in his closing argument, made reference to his own age. In rebuttal closing argument, Pineiro’s counsel, while acknowledging his respect for opposing counsel, basically agreed that his opponent was, as he himself admitted, getting old, noting that the City’s counsel had inadvertently misstated some otherwise undisputed facts. While it is improper to make derogatory remarks about opposing counsel,
 
 Maercks v. Birchansky,
 
 549 So.2d 199 (Fla. 3d DCA 1989), and it should be avoided, contextually, this comment does not require reversal.
 

 2. The City’s Expert Witness.
 

 Numerous eyewitnesses testified on behalf of Pineiro as to their factual observations of the pursuit of Crowe by the police just prior to the accident. The City defended, asserting that, objectively, the pursuit could not have occurred as testified to because not enough time elapsed between the start of the purported pursuit and its tragic conclusion, which occurred just nine-tenths of a mile from the start, for the police to have engaged in the pursuit and reached the speeds estimated by Pineiro’s witnesses. The City retained an expert whose opinion testimony supported the City’s position.
 

 Pineiro’s counsel, in his initial closing, commented:
 

 Now, if I understand the City of Orlando’s position, on one hand, they don’t want you to believe any of the nine witnesses. But just in case you do, let me head up to Connecticut and find me an expert and pay him $25,000.
 

 In his later rebuttal closing, Pineiro’s counsel argued that the City’s expert did not have a Ph.D. and was not an engineer, yet the fee was $25,000. While these arguments infer or suggest that the City will do whatever it takes to win by paying this type of fee to, in Pineiro’s view, a somewhat unaccomplished expert, we find the comments, under
 
 Murphy,
 
 do not justify reversal,
 

 
 *1073
 
 3. Value of Life—Analogy to Dwight Howard.
 
 [9]
 

 Pineiro’s counsel stated to the jury:
 

 We live in a very strange society. If someone is at fault in a crash, ran a red light and injured Dwight Howard, and Dwight Howard broke a bone and couldn’t play basketball for a year, no jury in the world would have any problem compensating Dwight Howard $20 million or whatever the value of one year’s salary is for Dwight.
 

 But we’re all here today trying to evaluate Mom and Dad’s pain and suffering for the loss of their son. Edwin was not famous. He was not a star. Very few people even knew who he was. Edwin was one of many faces in the crowd, but to Mom and Dad, he was the most important person in the world.
 

 This is an improper value of life argument,
 
 Fasani v. Kowalski,
 
 43 So.3d 805 (Fla. 3d DCA 2010),
 
 Chin v. Caiaffa,
 
 42 So.3d 300 (Fla. 3d DCA 2010), but does not meet the
 
 Murphy
 
 test for reversal.
 

 4. Doing Whatever it Takes to Try to Win.
 

 One of the witnesses testifying for Pineiro was Johnny Harris, an employee of the City. In closing, Pineiro’s counsel argued:
 

 About one week before trial, just one week before trial, the City finally takes the deposition of Johnny Harris. They don’t like his testimony so much, what do they do? A City of Orlando employee. They went and you saw it, a stack of documents to try to discredit Johnny Harris, a City of Orlando employee. The City will go and do whatever it takes to try to win this case, but it didn’t work with Johnny Harris.
 

 This argument is improper. The statement that the City would “do whatever it takes to try to win this case” suggests that the City is engaging in improper or less than honest tactics. Zealous advocacy is not improper.
 
 Carnival Corp. v. Pajares,
 
 972 So.2d 973, 977 (Fla. 3d DCA 2007) (finding “grievous” the plaintiffs arguments suggesting defendant acted improperly by defending plaintiffs claim and denigrating its defenses). We find, however, that, while this argument should be avoided on retrial, under
 
 Murphy,
 
 this unob-jected-to comment does not require reversal.
 

 Because none of the unobjected-to arguments, while arguably improper, meet the
 
 Murphy
 
 test for reversal, they have not been a factor in our decision to reverse this case and remand for a new trial.
 
 [10]
 

 Carnival Corp.,
 
 972 So.2d at 979.
 

 II. OTHER EVIDENTIARY ISSUES
 

 To facilitate the retrial, we address the other evidentiary issues raised.
 

 A. Evidence of Crowe’s Guilty Plea.
 

 The City contends that even though the jury heard that Kenyon Crowe was testifying from prison, his anticipated
 
 *1074
 
 release date, his use of marijuana on the day of the accident, and that his blood alcohol level was, in essence, twice the legal limit, the trial court erred in precluding evidence of Crowe’s plea of guilty to DUI manslaughter and his conviction thereof for his part in Alvarado’s death. Pineiro responds that because Crowe was no longer a party but merely a
 
 Fabre
 
 defendant,
 
 [11]
 
 evidence of his conviction was improper and, in any event, its admission would have been unfairly prejudicial because an admission against interest can only be used as it affects the interests of the person making the plea and cannot be used against others.
 

 In the context of this case, we do not read
 
 Fabre
 
 to preclude this evidence. In civil actions, where one of the issues is the guilt of a person convicted of a criminal offense or some fact necessarily involved in the determination of such guilt, it is proper to admit evidence of the person’s plea of guilty to the criminal offense. § 772.14, Fla. Stat.
 
 (2010); Boshnack v. World Wide Rent-A-Car, Inc.,
 
 195 So.2d 216, 219 (Fla.1967). On retrial, evidence of Crowe’s guilty plea and a certified copy of the judgment of conviction reflecting Crowe’s plea is admissible as an admission against interest because this admitted culpability for the accident and Alvarado’s death is a factor for consideration by the jury.
 

 B. Prior Arrests.
 

 The City argues that the trial court impermissibly precluded inquiry of Pineiro’s eyewitnesses regarding their prior arrests by the Orlando Police Department. The City asserted that, pursuant to section 90.608, Florida Statutes (2009), evidence of these prior arrests, regardless of the lack of conviction, is admissible to demonstrate the witnesses’ bias against the City.
 

 Section 90.608 provides in pertinent part:
 

 Any party, including the party calling the witness, may attack the credibility of a witness by:
 

 (1) Introducing statements of the witness which are inconsistent with the witness’s present testimony.
 

 (2) Showing that the witness is biased.
 

 (3) Attacking the character of the witness in accordance with the provisions of s. 90.609 or s. 90.610.
 

 The City points out that at least one of Pineiro’s witnesses, on direct examination, testified he had friends and relatives employed in the Orlando Police Department, but when the City attempted, on cross-examination, to introduce evidence of the witness’s prior arrests by the Orlando Police Department, the trial court precluded the testimony. Pineiro argues that no error occurred because section 90.610 permits a party to attack the credibility of any witness only with evidence of a conviction of a prior felony or a crime involving dishonesty or false statement, which was not the situation here. However, section 90.610(3) specifically provides that nothing in section 90.610 affects the admissibility of evidence under section 90.608.
 

 We find that the trial court failed to apply the proper standard in summarily precluding evidence that may demonstrate bias against the City. On retrial, the trial court should, pursuant to section 90.403, determine whether the probative value of any prior arrests of Pineiro’s witnesses by the Orlando Police Department is substantially outweighed by the danger of unfair prejudice.
 

 
 *1075
 
 III. VERDICT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
 

 The City argues that the trial court erred in not granting its motion for new trial because the verdict is contrary to the manifest weight of the evidence. The City contends that no objective view of the evidence, which includes video surveillance evidence from the business establishment where the pursuit purportedly began and evidence at the crash site, could support the conclusion that its police officers had sufficient time to engage in this pursuit. The City therefore concludes that the jury either disregarded the jury instructions or based its verdict on improper passion, prejudice, and undue influence. We disagree.
 

 Pineiro called nine eyewitnesses, each of whom testified to their observations of the speed and manner in which the City’s police officers were driving just prior to the accident. The jury was free to reject the City’s expert witness testimony, even if not contradicted by an opposing expert, in favor of conflicting lay testimony or other evidence.
 
 Durousseau v. State,
 
 55 So.3d 543, 562 (Fla.2010) (“Where expert testimony is admitted, it is still the sole province of the jury or court as trier of facts to accept or reject such testimony, even if it is uncontroverted.”),
 
 pet. for cert. filed,
 
 (U.S. May 10, 2011) (No. 10-10518);
 
 Parrish v. City of Orlando,
 
 53 So.3d 1199, 1203 (Fla. 5th DCA 2011) (“[A] jury is free to accept or reject an expert’s testimony or to give it such weight as it deserves, considering the witness’s qualifications, the stated basis for the witness’s opinion, and all of the evidence in the case.”);
 
 see also Wald v. Grainger,
 
 64 So.3d 1201 (Fla.2011) (“A jury is free to weigh the opinion testimony of expert witnesses, and either accept, reject or give that testimony such weight as it deserves considering the witnesses’ qualifications, the reasons given by the witness for the opinion expressed, and all the other evidence in the case, including lay testimony.”).
 

 -■ In summary, we reverse the final judgment based on the inflammatory and prejudicial comment regarding the hypothetical scene the jurors would face post-trial if they did not find in Pineiro’s favor. In addition, we conclude that the cumulative effect of the objected-to improper comments, as discussed above, acted in concert to deprive the City of a fair trial.
 
 Wer-neck; Bocher.
 
 Such comments cannot be condoned, and we urge vigilant adherence, on retrial, to professional standards during closing argument.
 

 REVERSED and REMANDED FOR A NEW TRIAL.
 

 ORFINGER, C.J. and JACOBUS, J., concur.
 

 [1]
 

 . Though Judge Julie O'Kane entered the final judgment, she did not preside over the trial or enter the order denying the City’s motion for new trial. Judicial assignments had apparently changed when the motion for entry of the final judgment was considered.
 

 [2]
 

 .
 
 Fabre v. Marin,
 
 623 So.2d 1182 (Fla.1993),
 
 receded from in part on other grounds, Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc.,
 
 659 So.2d 249 (Fla.1995). "A
 
 ‘Fabre
 
 defendant’ is a non-party defendant whom a party defendant asserts is wholly or partially responsible for the negligence alleged.”
 
 Salazar v. Helicopter Structural & Maint., Inc.,
 
 986 So.2d 620, 622 n. 1 (Fla. 2d DCA 2007).
 

 [3]
 

 . One of Pineiro's eyewitnesses, Janice Kilpa-trick, had testified that she observed officers after the accident administering no help to anyone in the vehicles and that they were standing there, laughing. While we are somewhat unclear why this evidence was relevant, there being no testimony from Pinei-ro's witness regarding the subject of the alleged laughter, no objection was raised at trial. In the City's case, two officers testified that any laughter pertained to the smallish stature of a third officer, who helped lift one of the vehicles.
 

 [4]
 

 . Appellate counsel was not Pineiro's trial counsel.
 

 [5]
 

 . The City, as a municipality, is not subject to punitive damages.
 
 See
 
 § 768.28(5), Fla. Stat. (2010).
 

 [6]
 

 . An obvious reference to the police pursuit in this case.
 

 [7]
 

 .
 
 C.f. Superior Indus. Int'l, Inc. v. Faulk,
 
 695 So.2d 376 (Fla. 5th DCA 1997).
 

 [8]
 

 . A golden rule argument is improper because it depends upon "inflaming the passions of the jury and inducing fear and self interest.”
 
 Bocher v. Glass,
 
 874 So.2d 701, 703 (Fla. 1st DCA 2004);
 
 see also Tremblay v. Santa Rosa County,
 
 688 So.2d 985, 987 (Fla. 1st DCA 1997). “The classic Golden Rule argument specifically requests the jurors to imagine themselves as the injured party, and to award damages as if they were the injured party.”
 
 SDG Dadeland Assocs., Inc. v. Anthony,
 
 979 So.2d 997, 1003 (Fla. 3d DCA 2008). Implicit golden rule arguments can also be improper.
 
 Id.
 

 [9]
 

 . Dwight Howard is an all-star basketball player with the Orlando Magic in the National Basketball Association.
 

 [10]
 

 . Our review of the record also indicates that Pineiro’s counsel argued that the jury did not see "one bit of remorse of any of the officers who testified in trial. Not one of them looked over at mom during the trial and said sorry for your loss.” No objection was made at trial and the issue was not raised on appeal. This argument is improper because it suggests the City is doing something wrong by either vigorously defending itself or not showing proper sympathy or empathy. It should also be avoided on retrial.
 
 Chin v. Caiaffa,
 
 42 So.3d 300 (Fla. 3d DCA 2010). A separate reference to the City’s alleged failure to conduct an "honest, fair" investigation into Alvarado’s death was also improper,
 
 Carnival Corp. v. Pajares,
 
 972 So.2d 973 (Fla. 3d DCA 2007), but was not raised on appeal.
 

 [11]
 

 . Pineiro unsuccessfully sought to preclude Crowe from being a
 
 Fabre
 
 defendant on the verdict form but did not pursue this issue on appeal.